### MARCH SESSION 1871, IN BOSTON.

#### [CONTINUED FROM VOL. CVI.]

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎪
HON. JAMES D. COLT, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

## SUFFOLK COUNTY.

### GEORGE ELLIS & others vs. BOSTON, HARTFORD AND ERIE RAILROAD COMPANY & others.

An indenture by which property was mortgaged to three trustees provided "that in case of the death, resignation or removal of one of said trustees, the premises hereby conveyed, and the trusts hereby created, shall vest in the survivors or survivor, who shall thereupon appoint in writing by deed a person or persons in the place and stead of the trustee or trustees so deceased, resigned or removed, and such appointment and the acceptance thereof shall vest the said premises and trusts in the person so appointed, jointly with the trustee so appointing, as fully as if such appointment had been originally made in this deed; and all subsequent vacancies happening in said trust shall be filled in like manner and with like effect, by the trustee in each case remaining." *Held*, that on the resignation of one, or of two trustees, the trust estate vested in the remaining trustees or trustee, and, on a conveyance by them or him to a new trustee or trustees the estate vested in the three.

The title of the trustee in a mortgage given by a railroad corporation to secure its bonds is not invalidated by the fact that he is an officer of the corporation.

VOL. XI.                1

Ellis *v.* Boston, Hartford and Erie Railroad Company.

A contract between an express company and a railroad corporation for carrying express matter over the railroad provided that the corporation should furnish the facilities for transportation, and the company should credit it with forty per cent. of the gross receipts of the business as compensation; that this forty per cent. of the receipts should be credited on promissory notes due from the corporation to the ompany for sums to be advanced; that, when these notes were discharged by such credits, then the share of the corporation in the gross receipts should be paid to it monthly in cash; and that the contract should continue for five years, and such longer time as might be necessary for the discharge of the notes and interest. Before the notes were discharged, a bill in equity was filed by holders of bonds of the corporation to foreclose a mortgage made by the corporation, of all its property, for the purpose of securing its bonds, to trustees, which provided that until default the use and control of the mortgaged premises should remain with the corporation, and that on a default continuing for six months the trustees should take and operate the railroad, collect the income, and apply the receipts in carrying on the business. Pending the suit in equity, receivers were appointed to preserve the property, run the railroad and receive the earnings thereof. On petition of the express company that the receivers should carry out the contract, as it had been carried out before by the corporation, the court ordered that they should continue the performance of the service required by the contract, but that the compensation due therefor should not be credited on the notes, and its application should be reserved until the determination of the question of foreclosure. Afterwards the railroad corporation was adjudged bankrupt, and subsequently the trustees were placed by the court in possession of the property of the corporation, upon paying or securing to the receivers their expenses and charges in running the railroad. The receivers then moved that the express company pay to them the compensation due for carrying out the contract from the time of their appointment until the trustees were put into possession. The assignees in bankruptcy consented to the payment to the receivers. But the trustees claimed the compensation on the ground that the possession of the receivers was a possession on their behalf. *Held*, that the lien of the mortgagees attached to the earnings of the railroad only from the time of their being put into possession of the property of the corporation, but that they were entitled to be repaid their advance to the receivers so far as it was applied to the expenses and charges of the receivers in managing the ordinary business of the corporation in their hands, and also, with the assent of the assignees, to all the compensation which was earned after the date of the bankruptcy, not needed for the expenses of the receivers; and that, as to the compensation earned before the bankruptcy, the express company must pay so much as was necessary to reimburse the receivers for their expenses and charges, and the balance, if any, they could apply to the reduction of the debt of the corporation to them.

An express company contracted with a railroad corporation for the carrying of express matter over the road of the corporation and the routes of other corporations leased or controlled by it, the amounts due to the railroad corporation for freight to be applied in repayment of money to be advanced by the express company. The railroad corporation became insolvent, and receivers, appointed on a bill in equity filed by mortgagees of the corporation, having continued to carry the express matter over the roads, filed a motion that the express company should pay them in cash for so doing. *Held*, that the fact that the officers of the leased and controlled corporations induced the express company to enter into the contract and make the advance, by representations that they might safely do so, was no answer, in whole or in part, to the motion, it not appearing that the money paid by the express company was apportioned among the corporations, either by the contract between the company and the insolvent corporation, or by the contracts between the latter and the other corporations, and the other corporations not being parties to the proceedings.

Ellis *v.* Boston, Hartford and Erie Railroad Company.

A railroad corporation, to secure payment of its bonds, made an indenture, styled a mort-gage, with trustees, which was confirmed by the legislature, and by which it conveyed to the trustees all the property, corporeal and incorporeal, then owned by it or thereafter to be acquired, provided that on payment of the bonds the estate granted should be void, the indenture being on the terms, conditions and agreement that until default the use and control of the granted premises should remain with the corporation, and providing that on a default continuing for six months the trustees should take and operate the road, collect the income, and apply the receipts in carrying on the business; and that, if the default should continue for eighteen months after possession taken, all equity of redemp-tion should be foreclosed, and the mortgaged property should vest absolutely in the trus-tees. The trustees took possession under the provisions of the indenture. *Held,* that they were not bound by a contract concerning the carrying of express matter, entered into by the railroad corporation, after the making of the indenture, with one who had notice thereof.

Bill in equity, filed July 20, 1870, by George Ellis, Mat-thew Bolles and Michael S. Bolles, in their own behalf, and in behalf of such holders and owners of the bonds secured by the mortgage hereinafter mentioned as should become parties plain-tiff, or join in the prosecution of the suit.

The bill alleged that the plaintiffs were holders of bonds issued by the Boston, Hartford & Erie Railroad Company, and secured by a mortgage * of its property to Robert H. Berdell, Dudley S.

---

* This instrument was styled an "Indenture of Mortgage, by and between the Boston, Hartford and Erie Railroad Company, a corporation existing under the laws of the states of New York, Connecticut, Rhode Island and Massachu-setts, party of the first part, and Robert H. Berdell, Dudley S. Gregory and John C. Bancroft Davis, trustees, parties of the second part;" and after reciting the vote for the issue of bonds to the amount of $20,000,000 by the company, pro-vided "that the parties of the first part, for the better securing and more sure payment of the sums of money mentioned in the said mortgage bonds, and each of them, according to the tenor thereof, and in consideration of one dollar, to them paid by the parties of the second part, at or before the ensealing hereof, the receipt whereof is hereby acknowledged, have granted, bargained, sold, conveyed, aliened, released and confirmed, and by these presents do grant, bar-gain, sell, convey, aliene, release and confirm, unto the said parties of the second part, and the survivor of them, and to his and their successors and assigns, all and singular the railways of said Boston, Hartford and Erie Railroad Com-pany," describing them, "as said railways are now or shall be located, con-structed or improved, under or by virtue of any powers now granted, or that may hereafter be granted or obtained, to locate, construct or use a railroad on any of said indicated lines, with all the lands that are included, or may be in-cluded, in the location of said railway or acquired for the uses cf said com-

Gregory and John C. B. Davis, dated March 19, 1866, and confirmed and ratified by an act of the legislature of this Commonpany within the terminal points aforesaid, but not including the lands at the termini at Boston and at Fishkill, which are outside of the location of said railroad, together with all their lands, tracks, lines, rails, bridges, ways, depots, stations, water-tanks, shops, buildings, piers and wharves, erections, fences, walls, fixtures, privileges, franchises, rights, leases and charters; also all the like estate, roads, railroads and structures, and matters and things pertaining or belonging thereto, that may be hereafter acquired or constructed, or belong to or be controlled by the party of the first part.

" Together with all the tolls, income, issues and profits to be had from the same, and all rights to receive and recover the same, and everything necessary for the complete use of the road; also all the locomotives, engines, tenders, cars, carriages, tools, shops, fixtures and machinery, and all the coal, wood and other fuel belonging or appertaining to said railroad, or that may at any time hereafter belong or appertain to the same, as it may be changed by use and new acquisitions; also all the estate, real, personal and mixed, of any of the foregoing descriptions, or of any other kind which may be hereafter acquired by the party of the first part, and used, or intended to be used, in the construction and operation of the said railroad.

" To have and to hold the same, together with all and singular the emoluments, income and advantages, tenements, hereditaments and appurtenances thereunto belonging, unto the said parties of the second part and the survivor of them, and his and their successors and assigns forever, on the trusts, and for the uses and purposes herein declared, and none other.

" Provided always, and these presents are upon the express condition, that if the said parties of the first part shall well and truly pay, or cause to be paid, to the holders of the said mortgage bonds or obligations, intended to be secured hereby, and every of them, the principal sums of money therein mentioned, according to the true intent and meaning thereof, with interest thereon, at the times and in the manner therein provided, according to the true intent and meaning of these presents, that then and from thenceforth this indenture, and the estate hereby granted, shall cease, determine and be utterly void.

" And this indenture further witnesseth, that these presents, and the said mortgage bonds or obligations, hereby intended to be secured, are made, executed and delivered, upon the terms, conditions and agreements following, that is to say:

" *First.* That the actual possession, use, management and control of all the granted premises, shall remain with the parties of the first part, so long as the said mortgage bonds shall remain without default or forfeiture, who may from time to time, with the consent of the trustees in writing, sell or exchange any of the mortgaged estate, and purchase with the proceeds other property, to be included under this indenture.

wealth, passed April 12, 1866 (St. 1866, *c.* 142) ; that there was, and had been for more than six months, a default in the

" *Second.* That in the case of the death, resignation or removal of one of said trustees, the premises hereby conveyed, and the trusts hereby created, shall vest in the survivors or survivor, who shall thereupon appoint in writing, by deed, a person or persons in the place and stead of the trustee or trustees so deceased, resigned or removed, and such appointment and the acceptance thereof shall vest the said premises and trusts in the person so appointed, jointly with the trustee so appointing, as fully as if such appointment had been originally made in this deed; and all subsequent vacancies happening in said trust shall be filled in like manner and with like effect, by the trustee in each case remaining. And in case of the decease, removal or resignation of all of said trustees, the vacancies may be filled by any judge of the supreme court of the state of Connecticut, on application of any party interested, on such notice to the other parties interested as the judge acting shall order; and the trustees so appointed and accepting shall become vested with all the franchises and estate hereby conveyed, on recording or lodging a certified copy of the order for their appointment in all places where this mortgage is required by law to be recorded or lodged.

" And this indenture further witnesseth, that the said parties of the first part, for themselves and their successors, do covenant and agree to and with the said parties of the second part, the survivor of them, and his and their successors and assigns :

" *First.* That they will, at their own proper charge, do all things necessary to be done to keep intact the lien hereby created.

" *Second.* That they will, at any time or times hereafter, upon the request of said parties of the second part, their successors or assigns, make, do and execute, and cause to be made, done and executed, all and every such further and reasonable acts, conveyances, assignments and assurances in the law, for the better and more effectual vesting and confirming the premises hereby granted, or intended so to be, in and to the said parties of the second part, their successors and assigns forever, as by the said parties of the second part, their successors or assigns, or their counsel learned in the law, shall be reasonably devised, advised or required.

" *Third.* That of the whole issue hereby authorized to be made of said bonds, there shall be retained, in the hands of said parties of the second part, such amount of said bonds as shall be equal to the whole amount of the bonds and mortgage notes, outstanding from time to time, which are a lien upon any of the property or franchises hereby conveyed, which are to be delivered to the parties of the first part only on the cancellation of a corresponding amount of said outstanding bonds or mortgage notes.

" *Fourth.* That the party of the first part will, at the close of the year 1869 and at the close of each year thereafter, during the continuance of this trust,

payment of interest due upon the bonds; that the security was depreciated in value and inadequate; that sundry suits were

pay to the parties of the second part, their successors and assigns, a sum equal to ten per cent. upon the net earnings for the current year, remaining after the payment of the current interest for that year on the then outstanding bonds issued under this mortgage; which sum the said trustees shall invest, as received, in said mortgage bonds, if the same can be purchased, at not exceeding one hundred and twenty-five per cent.; and if they cannot invest the same in said mortgage bonds at that limit, they shall invest them in gold-bearing securities of the United States; and they shall invest all sums received from interest and dividends on the trust fund, in like manner, and shall hold the trust fund as a security for the payment of the said mortgage bonds at maturity, and shall annually, on the first day of January in each year, report the condition of the said trust fund to the secretaries of state of the states of Massachusetts, Rhode Island, Connecticut and New York.

" *Fifth.* That the parties of the first part will pay, unto the holders of the said mortgage bonds respectively, the said principal sums of money respectively mentioned as above, and as expressed in said bonds, and will pay the interest thereon as the same shall become due and payable.

" *Sixth.* That the expenditure of all sums of money, realized by or from the sale of the bonds issued under this mortgage, shall be made with the approval of at least one of the said trustees, whose assent in writing shall be necessary to all contracts made by the party of the first part, before the same shall be a charge upon any of the sums received from said sales.

" *Seventh.* That in case default be made by said company in payment of any moneys, either principal or interest, secured hereby, (the default continuing for six months,) the said company shall, on demand of the trustees or trustee for the time being, or his or their agent, authorized thereto in writing, deliver to said trustees or trustee, or his or their agent, the actual possession of all the herein granted premises, and thereupon the said parties of the second part shall and may, by themselves, their officers, agents and employees, take, receive and operate the said railroad, franchises and other property and estate hereby conveyed, and collect, receive and have the rents, income and profits thereof, as fully as the party of the first part could do if no default had been made; and while so in possession, the said party of the second part shall app. such part of said rents, income and profits, as shall, in their judgment, be necessary to the payment of the running and operating expenses of the road, including the necessary repairs of road, road-bed, buildings, machinery and equipment, and all expense of agents, clerks, officers, employees and laborers, and all claims for damages allowed, and all payments for insurance and taxes, and all items usually distributed to transportation expenses in railroad accounts, and to such increase and improvement of said roads, buildings, machinery and equipment as the business shall, in their judgment, require, and to the payment

pending against the company, and there were attachments on its property; that its property and business were not properly

of any and all claims necessary to secure and assure to them the estate and franchises hereby conveyed, and to their own compensation, and to the employ- ment of competent legal advisers in their discretion, and to any and all other charges that are or should be allowed by a court of equity in the case of a re- ceiver, as settled and established in the case of the receivership of the New York and Erie Railroad. And the parties of the second part are further au- thorized and empowered, after having taken possession as aforesaid, to contract with any other corporation to lease or to operate the said railroad and fran chises for any period, not exceeding the term that the trustees are herein au- thorized to retain possession thereof.

"*Eighth.* Said parties of the second part, having taken possession as afore- said, shall be further authorized, and may be required, whenever there shall be in their possession a sufficient sum for such purpose, (not required for any of the purposes aforesaid,) to pay in full any one class (beginning with the ear- liest) of matured and overdue interest warrants on said bonds, to the person or persons holding and presenting them for payment; and the said parties of the second part shall, while in possession of said roads and operating the same, or causing the same to be operated on a lease thereof, keep full and accurate accounts of all sums received or paid out by them, which shall be, at all rea- sonable times, open to the inspection of the party of the first part, and they shall, at least once a year, publish abstracts thereof for the use of the bond- holders; and whenever the said parties of the second part are in doubt as to any of their powers or duties in the premises, they may apply to the supreme court of the state of Connecticut, or any judge thereof in chambers, for direc- tions, and the directions or order of said court or of such judge thereof, on their application, when complied with, shall be their full protection for so doing.

"*Ninth.* On taking possession as aforesaid, the said trustees shall file in the office of the secretaries of state of the states of Massachusetts, Rhode Island, Connecticut and New York, a written notice, acknowledged before a notary public, that they have taken possession of said mortgaged property, franchises and estate, for default in the payment of principal or interest, or both, as the same may be, and of their purpose to foreclose the said mortgage for said de- fault. And if the said default shall continue for the space of eighteen months after such notice shall be filed, the whole of the mortgaged premises and fran- chises shall vest absolutely and in fee in the parties of the second part without further assurance and without further process of law, and all right or equity of redemption of the party of the first part therein shall be forever barred and foreclosed; but if the whole of the principal and interest in arrear, with inter- est thereon, when the same may by law be demanded, and the lawful claims, disbursements and liabilities of the said trustees, made or incurred as aforesaid,

managed by the directors; that there was a question as to what persons were now the legal trustees of the mortgage; that the

on account of their trust, shall be paid and satisfied within the said period of eighteen months after the said notices shall have been filed, either by the said party of the first part, (which right they are to have,) or out of the net earnings of the property in the trustees' possession, then the said parties of the second part shall surrender unto the said parties of the first part the said mortgaged property, franchises and estate, and all additions made by them thereto, and the said parties of the first part shall thereupon and thereby become revested with the same, as of their former estate, without further assurance.

"*Tenth.* In case of an absolute foreclosure under the provisions of this instrument, it shall be the duty of the trustees to call a meeting of the holders of the mortgage bonds secured by this instrument, by an advertisement of the time and place and object thereof, at least three times a week, for three successive weeks, in newspapers published, one in the city of Boston, one in the city of Providence, one in the city of Hartford, one in the city of New York, and one in London, in England; and the bondholders at such meeting may, at an election to be presided over by such of the parties of the second part, or their successors, as shall be present, and in which each bondholder may cast one vote for every one thousand dollars principal sum of such bonded debt held by him, choose from their number a board of directors of like number with the then board, and may organize themselves into a corporation, with a corporate name to be selected by them, and a capital stock equal to such outstanding mortgage debt, divided into shares of one hundred dollars each, which said corporation shall be invested with all the powers, privileges, and franchises, and shall be subject to all the duties, liabilities and restrictions of the Boston, Hartford and Erie Railroad Company, and shall consist of the holders of the mortgage bonds secured hereby, at the rate of ten shares for every bond of one thousand dollars, or of two hundred pounds sterling, as said bonds shall be surrendered to said new corporation to be exchanged for certificates of stock, at the rate aforesaid. And the said parties of the second part shall, by deed, convey unto the said new corporation all the said mortgaged property, premises, estate and franchises, and all additions thereto, and all moneys. remaining in their hands, when they shall be fully paid and indemnified for their services and liabilities as hereinbefore provided; copies of which said deed shall be recorded or lodged wherever this instrument is required by law to be recorded or lodged; and upon the organization of the bondholders into a corporation, they shall file, in the offices of the several secretaries of state above named, copies of their proceedings in the organization, under their corporate seals, attested by their president and secretary, which shall be *primâ facie* evidence in all suits for or against them that they are a corporation; and after that time no bondholder shall participate in the earnings of the mortgaged property until he surrenders his bonds to the new corporation as herein provided.

persons acting as such trustees were unsuitable for the trust; and that the directors of the company were about improperly to issue other bonds, and do certain other acts, to the injury of the company's interests and the prejudice of the bondholders.

It also alleged that a valuable part of the property of the corporation was a lease dated February 9, 1869, which the Boston, Hartford & Erie Railroad Company had taken of the road of the Norwich & Worcester Railroad Company, at a fixed rent, for a hundred years, which gave it the benefit of a contract between the latter company and the Norwich & New York Transportation Company, and secured to it the control of a through line from Boston to New York; and that there was immediate danger of a forfeiture of this lease through a default in payment of the rent.

The prayer was, that the mortgage might be foreclosed, the property covered by it sold under a decree of the court, and the proceeds distributed and applied to the payment in whole or in part of the bonds, and that "in the mean time, and until the final adjudication of this cause, some proper person may be appointed by this court receiver of all the railroad, rolling stock, franchises, rights and property covered by or embraced in, or intended to be covered by or embraced in said mortgage, and of all the rents, income, profits and issues thereof or therefrom, and apply the same, under the order of this court, with full power to run and operate said road, and with all the other usual and incidental powers ordinarily vested in or granted to receivers in like cases."

On August 2, 1870, upon the application of the plaintiffs, the court, "for the care and preservation of the property of the company," appointed receivers, with full power and authority to take possession of the railroads of the Boston, Hartford & Erie Railroad Company, with all its "privileges, franchises, rights, leases, charters," and all its property, "and the earnings and income thereof and therefrom;" directed the receivers to "maintain and

---

"*Eleventh.* The remedy herein given to said parties of the second part shall not be construed to deprive them or any other parties of their full rights and remedies in the several courts of law and equity in said states, as they exist now or may hereafter exist, and any court of competent jurisdiction may enforce any of the provisions of this instrument."

keep in repair the said railroads, and operate and carry on the same, or such part thereof as may be practicable and for the interest of all parties concerned, and receive the income from and earnings thereof;" required the officers, agents and employees of the company to surrender the property to the receivers; declared· that the legal possession and control of all the property should vest immediately in the receivers; directed them to take and retain possession "of all the property, deeds, leases, contracts, books, papers and vouchers" of which they were appointed receivers; authorized them "at their discretion to dismiss from service any agent or employee of said company, other than the president, directors, treasurer, assistant treasurer, secretary or clerk of said company, and from time to time fill the vacancy as occasion may require;" to make all necessary contracts and disbursements for carrying on the road, settle "all legal and just claims for damages or injuries to persons or property claimed against them, incurred while such receivers," account for all receipts and disbursements, "pay and discharge, out of any moneys which shall be in their hands, as such receivers, any sums due from" said company, "for labor performed after the first day of June last in operating its road, or supplies or material furnished the said company after that day for operating its road, including all salaries due or payable by said company to its officers, for services performed by them for said company since said first day of June," and pay all sums necessary "to preserve any leasehold interests or leasehold rights, or other rights, or any property, easements or rights of way."

Upon the application of other creditors of the company, in like interest with the plaintiffs, the court, after notice and hearing thereon, admitted them to join in the prosecution of the suit.

Hearing upon agreed facts as to what persons were now the legal trustees of the mortgage, before *Gray*, J., who reserved the question for the decision of the full court. The facts are stated in the opinion.

*B. F. Brooks*, for the plaintiffs.

*W. G. Russell & T. K. Lothrop*, for other parties in like interest.

*J. G. Abbott,* (*J. P., Healy* with him,) for the trustees.

*E. L. Pierce,* for the Commonwealth.

CHAPMAN, C. J. The questions presented on this hearing relate merely to the validity of the assignments which have been made of the mortgage executed by the company to Berdell, Gregory and Davis, dated March 19, 1866. The mortgage was made in trust to secure the bonds of the company to the amount of twenty millions of dollars, to be thereafter issued. The mortgage is in form an indenture, the trustees being called the parties of the second part. The conveyance is made to have and to hold " unto the said parties of the second part and the survivor of them, and his and their successors and assigns forever, on the trusts, and for the uses and purposes herein declared, and none other." One of the " terms, conditions and agreements " upon which the conveyance is made is as follows :

" *Second.* That in the case of the death, resignation or removal of one of said trustees, the premises hereby conveyed, and the trusts hereby created, shall vest in the survivors or survivor, who shall thereupon appoint in writing, by deed, a person or persons in the place and stead of the trustee or trustees so deceased, resigned or removed, and such appointment and the acceptance thereof shall vest the said premises and trusts in the person so appointed, jointly with the trustee so appointing, as fully as if such appointment had been originally made in this deed ; and all subsequent vacancies happening in said trust shall be filled in like manner and with like effect, by the trustee in each case remaining. And in case of the decease, removal or resignation of all of said trustees, the vacancies may be filled by any judge of the supreme court of the state of Connecticut, on application of any party interested, on such notice to the other parties interested as the judge acting shall order ; and the trustees so appointed and accepting shall become vested with all the franchises and estate hereby conveyed, on recording or lodging a certified copy of the order for their appointment in all places where this mortgage is required by law to be recorded or lodged."

On February 27, 1867. Berdell by an instrument in writing resigned his trust, and by indenture of October 28, 1867, between

Gregory, Davis and John S. Eldridge, the latter is appointed trustee as successor to Berdell, and they convey to him the interest in the property which had before belonged to Berdell.

On December 31, 1868, by an instrument under seal and acknowledged, Davis and Gregory each resigned his trust, and assigned all his right, title and interest in the property to Eldridge.

On August 16, 1869, by indenture between Eldridge of one part, and Mark Healey and Henry N. Farwell of the second part, he appointed the latter his co-trustees, and assigned to them a joint interest in the property.

On March 16, 1870, Healey and Farwell, by an instrument of that date, under seal and acknowledged, resigned their trust, and assigned their interest in the property to Eldridge ; and on the same day, by indenture between Eldridge of one part and Thomas Talbot and Moses Kimball of the other part, reciting all the prior appointments and resignations, he appoints them his co-trustees, and assigns to them a joint interest in the property.

On the same day, by an instrument under seal and acknowledged, Eldridge resigned his trust, and assigned to Talbot and Kimball all his interest in the property.

On July 25, 1870, by indenture between Talbot and Kimball of one part, and Avery Plumer of the second part, they appointed him co-trustee with them, and assigned to him a joint interest in the property.

The question submitted to the court is, whether Talbot, Kimball and Plumer are now the trustees and hold the legal title to the mortgaged property.

It is obvious from the foregoing recital, that the resignations, appointments and conveyances have all been made in conformity with the terms of the mortgage. The clause above cited authorizes any of the trustees to resign at his pleasure. It provides that upon such resignation the trusts shall vest in the survivor or survivors. When Berdell resigned, he made no conveyance to the survivors. But such conveyance was not required by the terms of the instrument, and it is well settled that the person who creates the trust may mould it in whatever form he pleases, and may therefore provide that on the occurrence of certain events

and the fulfilment of certain conditions, the original trustee may retire, and a new one be substituted. Lewin on Trusts, (5th ed.) 459. It is also well settled that a disclaimer of a trust by one of several trustees vests the estate in the remaining trustees without any express provision of the will or deed, and in that class of cases, where a vacancy results from the incapacity of the trustee or his removal from the country, the necessity of the case and the want of power to compel a conveyance requires the court to recognize the power of the remaining trustee to convey to his co-trustee without a conveyance from the retiring trustee. *Cape* v. *Bent*, 9 Jur. 653. *O'Reilly* v. *Alderson*, 8 Hare, 101. *Mennard* v. *Welford*, 1 Sm. & Gif. 426. *Eaton* v. *Smith*, 2 Beav. 236. *Cooke* v. *Crawford*, 13 Sim. 91. *In re Moravian Society*, 26 Beav. 101.

The estate created by the mortgage is in legal effect an estate in joint tenancy in three trustees, determinable either by death, resignation or removal ; and limited over, upon the happening of either event, to the survivors, until they shall appoint a new trustee, and convey to him so as to vest the estate jointly in themselves and the new trustee.

The appointment of new trustees has been by the survivors or survivor while in office, so that it is not like the cases where an appointment by a retiring trustee of a successor in his own place has been held invalid. It has been done as the instrument directs, and a proper conveyance has been made to each new trustee. In the cases where it has been held invalid, the execution has not conformed to the power.

The question has been suggested, whether Eldridge, Farwell and Healey were competent to act as trustees for the bondholders, they being at the time officers of the corporation. This fact cannot affect their capacity to hold and pass the title, which is the only question now before us ; for the individuals who are officers are distinct from the corporation itself, and may make contracts with it, make conveyances to it, and receive conveyances from it ; and, in general, all persons are competent to be trustees.

On the whole, we can see no ground to doubt that the present trustees have been legally appointed, and that their title to the

trust property is valid. It is obvious that the contingency which would authorize an application to the supreme court of the state of Connecticut has never arisen, there never having been a va cancy of all the trustees at any one time.

*Title of the present trustees declared valid.*

On September 30, 1870, the Adams Express Company filed a petition, which set forth that on April 1, 1869, the petitioners entered into an indenture with the Boston, Hartford & Erie Railroad Company, which provided that the petitioners should transport their express matter or freight over the railroad of that corporation, and the lines leased and operated by it, and it should give them the necessary facilities therefor ; that the petitioners should credit the Boston, Hartford & Erie Railroad Company, as its share of the proceeds of the business, with forty per cent. of the gross receipts, with certain deductions, and the remaining sixty per cent. of the gross receipts should be retained by the petitioners as their share in the proceeds of the business ; that the petitioners should lend and advance to the Boston, Hartford & Erie Railroad Company the sum of $200,000, for which they should receive its note or notes, with the pledge of 10,000 shares of their capital stock as collateral security for the repayment of the $200,000 with interest; "that the forty per cent. of the gross receipts herein above allotted to " the Boston, Hartford & Erie Railroad Company " may be credited when due upon said notes, and shall, to the extent of such credit, discharge the same, and when such credits shall amount to the said sum of $200,000 and interest so to be advanced, then the said notes and the 10,000 shares of the capital stock shall be surrendered to " the Boston, Hartford & Erie Railroad Company, and the petitioners " shall thereafter pay monthly in cash to " the Boston, Hartford & Erie Railroad Company " its share of the gross receipts as hereinbefore provided ; " that the contract should continue in force until the $200,000 and interest to be advanced should be wholly repaid, " whether during the term hereinafter fixed as a limit to this contract, or not ; " and that the contract should continue for five years from its date.

The petition further alleged that the petitioners faithfully fulfilled all their part of the agreement and advanced the $200,000 to the Boston, Hartford & Erie Railroad Company ; that there remained due upon the $200,000, on the principal $104,762, and for interest $12,582 ; that the stock given as collateral security was worth not more than $58,000 ; and that the receivers had notified the petitioners that they did not regard the contract as binding upon them, and would terminate it on the first day of October next.

The prayer was, that the receivers might carry out and comply with all the terms of the contract, in the same manner and to the same extent as they were being carried out by the Boston, Hartford & Erie Railroad Company before the appointment of the receivers.

The receivers answered, admitting the making of the contract, requiring proof, if material, that the petitioners had performed their part of it, alleging that it was grossly unconscionable, and denying that they were bound by it. The matter was referred to a master, who reported that the contract was just and fair, and that the petitioners had performed their part thereof. The case was reserved by *Gray*, J., on the petition, answer and master's report, for the determination of the full court, such order or decree to be entered as justice and equity might require.

*B. R. Curtis, & C. A. Seward* (of New York), for the petitioners. The receivers stand in all respects in place of the railroad company. *Jefferys* v. *Dickson*, Law Rep. 1 Ch. 183, 190. *Receivers* v. *Paterson Gas Light Co.* 3 Zabr. 283. *Hyde* v. *Lynde*, 4 Comst. 387. *Devendorf* v. *Beardsley*, 23 Barb. 656. *Bell* v. *Shibley*, 33 Barb. 610. *Curtis* v. *Leavitt*, 15 N. Y. 9. *Lincoln* v. *Fitch*, 42 Maine, 456. Their rights are the same as those of the assignees of a bankrupt, who take the bankrupt's estate subject to all the equities which affect him. *Ridout* v. *Brough*, Cowp. 133. *Mitford* v. *Mitford*, 9 Ves. 87, 100. *Brown* v. *Heathcote*, 1 Atk. 160. *Ex parte Stephens*, 11 Ves. 24. *Clason* v. *Morris*, 10 Johns. 524, 540. *Murray* v. *Lylburn*, 2 Johns. Ch. 441. *Mumford* v. *Murray*, 1 Paige, 620. *Smith* v. *Kane*, 2 Paige, 303. *Van Epps* v. *Van Deusen*, 4 Paige, 64. *Ex parte*

*Newhall*, 2 Story, 360. *Winsor* v. *McLellan*, Ib. 492, 495. *Mitchell* v. *Winslow*, Ib. 630. *Fletcher* v. *Morey*, Ib. 555. *Winsor* v. *Kendall*, 3 Story, 507. *In re Hambright*, 2 Bankr. Reg. 157, 2 Story Eq. § 1411.

*C. B. Goodrich & J. D. Ball*, for the receivers.

WELLS, J. The receivers were appointed upon a bill in equity, brought by certain creditors of the Boston, Hartford & Erie Railroad Company, holding bonds secured by a mortgage of its road, property and franchises to trustees therein named. The suit is brought in behalf of themselves and all other creditors holding like bonds. They allege a default in the payment of interest due upon said bonds; that the security is depreciated in value and inadequate; that sundry suits are pending against the corporation, and attachments upon its property; that the property and business of the corporation are not properly managed by the directors; that there is some question as to what persons are now the legal trustees of said mortgage; and that the persons acting as such trustees are unsuitable for the trust. They also allege that the directors of the corporation are about to issue improperly other bonds, and to do certain other acts to the injury of the interests of the corporation, and to the prejudice of said bondholders. They pray that receivers may be appointed to preserve and protect the property; that said mortgage may be foreclosed, the property sold under a decree of this court, and the proceeds distributed and applied to the payment in whole or in part of the said bonds.

It has not yet been determined whether the court will proceed to a foreclosure of the mortgage, and a sale of the property and distribution of the proceeds, according to the prayer of this bill. In the mean time, pending the suit, the receivers are directed, for the care and preservation of the property, to take possession of the road, with all its property, franchises and rights, including the earnings and income thereof; "to maintain and keep in repair the said railroads, and operate and carry on the same, or such part thereof as may be practicable and for the interest of all parties concerned; and receive the income from and earnings thereof." They are authorized to dismiss any of the agents or servants of

the corporation, and to employ others ; to make all necessary contracts and disbursements for the purpose of carrying on the road, and to make certain other payments particularly specified ; and are required to account for all receipts and disbursements.

The payment of debts of the corporation, previously contracted, would be inconsistent as well with the nature and purpose of the office of the receivers, as with the terms of their appointment. They have no right to appropriate the property and assets of the corporation for that purpose, nor the earnings of the road while operated by them. The amounts to be allowed under the contract of the corporation with the petitioners are earnings of the road, to be acquired by service requiring outlays by the receivers, and are a part of its legitimate assets, as much as if due in money. By the terms of the contract, they are to be applied to the debt of the corporation. But that contract constitutes no lien upon the property or franchise of the corporation ; and it is no more obligatory upon the receivers, either to make the application or to render the service, than the debt itself is. To fulfil that contract in all its terms will be, in substance and effect, to appropriate the use of the property and the earnings of the road, *pro tanto*, to the payment of the debt to the petitioners, in preference to all others. The receivers may properly refuse so to do.

But as they hold the property at present only provisionally, and, until the ultimate disposition of the case, it is uncertain whether it will be disposed of for distribution to creditors, according to their respective rights, under direction of the court, or restored to the corporation, such direction should be given as will in one event secure to the creditors, in whose behalf that bill is brought, all their just rights, and at the same time, in the other event, disturb, as little as may be, the relations and rights of the corporation, and of other parties under their contracts with the corporation. This will be accomplished most nearly, if the receivers are directed to continue the performance of the service required by the contract, leaving the question of the application of the amount to become due as compensation therefor, either under the contract or otherwise, or the payment thereof to the receivers, to be determined hereafter, when the ultimate disposition of the

property and of the suit aforesaid shall have been decided; the petitioners meanwhile keeping and rendering accounts thereof, and paying or securing to the receivers the share of said earnings to which they are entitled for the service so rendered by them.

*Ordered accordingly.*

On October 20, 1870, a petition in bankruptcy was filed in the district court of the United States for the district of Massachusetts, against the Boston, Hartford & Erie Railroad Company, and on March 2, 1871, the corporation was adjudged bankrupt.

On March 1, 1871, this bill in equity against the corporation was taken *pro confesso,* and on May 9, 1871, a decree of foreclosure was passed, which provided that upon payment by the trustees under the mortgage, to the receivers, of all sums which they had advanced and borrowed under order of the court, of a proper compensation to them for their services, of all debts, liabilities and damages, which could be ascertained, incurred by the receivers, and upon the giving of security by the trustees for all debts, liabilities and damages, incurred by the receivers, which could not be ascertained, the receivers should deliver to the trustees the railroad and all other property in their hands; but that the receivers should still continue in office; that the trustees, on taking possession, should file the notices required by the mortgage; and that, if for eighteen months after the filing of the notices the default should continue, then the property should vest absolutely and in fee in the trustees, without further assurance and without further process of law, and all right or equity of redemption of the Boston, Hartford & Erie Railroad Company should be barred and foreclosed. On August 17, 1871, the trustees having made the payments and given the security required by the decree of foreclosure, the receivers in pursuance of an order of the court delivered the possession of the railroad and all other property of the Boston, Hartford & Erie Railroad Company into the hands of the trustees.

On October 21, 1871, the receivers filed a motion that the Adams Express Company pay to them the sum of $69,207, for services performed by the receivers in transporting express matter

and freight between the date of their appointment and the time when the trustees were put in possession, being the forty per cent. of the gross receipts mentioned in the contract. The motion set forth the sum in detail, by months. The assignees in bankruptcy of the Boston, Hartford & Erie Railroad Company appeared and consented that the sum should be paid over to the receivers; and the trustees under the mortgage filed a motion that the sum should be paid to the receivers to the end that it might be paid by them to the trustees.

At the hearing on this motion, before *Wells,* J., the facts above stated appeared, and the Adams Express Company offered to prove other facts, of which the following are all that are now material:

" That before they made the contract of April 1, 1869, with the Boston, Hartford & Erie Railroad Company, the latter had a lease from the Norwich & Worcester Railroad Company, and the benefit of the contract or arrangement of the Norwich & Worcester Railroad Company with the Norwich & New York Transportation Company respecting through freight to and from New York; that the chief express business contemplated by said contract of April 1, 1869, was to and from New York on the road of the Norwich & Worcester Railroad Company and by the boats of the Norwich & New York Transportation Company; that the said proposed contract contemplated that the Adams Express Company should collect all the dues for the express business over the roads of the Norwich & Worcester Railroad Company, and the Boston, Hartford & Erie Railroad Company, and by the boats of the Norwich & New York Transportation Company, should be allowed 60 per cent. thereof as their own compensation, and should allow the residue, being 40 per cent., as compensation to the Boston, Hartford & Erie Railroad Company for all service on its roads or under its contracts, including the Norwich & Worcester Railroad and the boats of the Norwich & New York Transportation Company; that it was further contemplated that the Adams Express Company should make an advance payment of $200,000 to the Boston, Hartford & Erie Railroad Company, on account of and on the faith and security of said 40 per cent.

so to be collected, and should retain said 40 per cent. to repay themselves said advance ; that said advance and security were essential parts of the contemplated contract ; that, while said contract was under consideration by the Adams Express Company, they advised with the Norwich & Worcester Railroad Company and the Norwich & New York Transportation Company respecting the same, and especially as to whether the said companies were bound to furnish to the Boston, Hartford & Erie Railroad Company the facilities for the said express business, and as to whether the Adams Express Company could safely make the advance payment of $200,000 on the faith and security of said 40 per cent. to be so retained by them ; that the said Norwich & Worcester Railroad Company and the said Norwich & New York Transportation Company knew that these matters were of the essence of the proposed contract, and advised the Adams Express Company that they could safely make the said contract and advance payment on the faith and security of the right to retain said 40 per cent., and that such prepayment would be recognized by the said companies as a valid and legal prepayment upon said security ; that the Boston, Hartford & Erie Railroad Company knew that the Adams Express Company, in making said contract, relied upon the right to collect and retain the said receipts as security ; and that the Adams Express Company did in fact make the contract of April 1, 1869, and the prepayment of $200,000, on the faith and security of the right to collect and retain the said 40 per cent., and in consequence of the advice and information of the Norwich & Worcester Railroad Company and the Norwich & New York Transportation Company.

" That, when the receivers were appointed by this court, they were notified by the Adams Express Company of the information and assurance they had received from the Norwich & Worcester Railroad Company and the Norwich & New York Transportation Company, and were notified not to pay or contract to pay anything to either of said companies for the transportation of express matter of the Adams Express Company, with any view of calling upon said express company to reimburse or secure them therefor, for the reason, among others, that those companies could not justly

or equitably demand or receive anything in derogation of the right of the Adams Express Company so to retain the said 40 per cent.

" That the receivers have not actually paid to the Norwich & Worcester Railroad Company, or the Norwich & New York Transportation Company, anything for services rendered to the express matter of the Adams Express Company; or have not paid any such amounts as, in addition to their own service rendered, would entitle them to demand the said 40 per cent."

The case was reported for the determination of the full court on the facts and offer of proof above stated, and the documents and proceedings referred to ; " such judgment, decree, order or further direction to be made as shall be deemed and found to be according to justice and equity and the rights of the several parties." But if any of the facts set forth in the offer of proof, not otherwise appearing or admitted in the case, should be deemed to be material for the proper and final disposition thereof, then the case was to stand for hearing for the proof of such facts.

On December 12, 1871, the Adams Express Company filed a petition against the trustees under the mortgage, praying that they might be restrained from refusing to transport express matter and freight for the petitioners under the contract of the latter with the Boston, Hartford & Erie Railroad Company. At the hearing, before *Wells,* J., the same facts appeared as at the hearing on the motion of the receivers, with the additional fact that the trustees refused to be bound by the contract; the same offer of proof was made by the Adams Express Company; and the case was reserved for the full court in similar terms. The motion and this petition were argued together in March 1872.

*J. D. Ball,* for the receivers. When the petition of the Adams Express Company was filed, the receivers were in possession of all the property, and all was covered by the mortgage, both that owned at the time of the mortgage and that subsequently acquired, the legislature having legalized the mortgage. *Howe* v. *Freeman,* 14 Gray, 566, 575. *Pennock* v. *Coe,* 23 How. 117. *Coe* v. *McBrown,* 22 Ind. 252. *Pierce* v. *Emery,* 32 N. H. 484. The receivers are entitled to compensation for the service performed, and when received they hold it for the trustees. When

the bill was filed, default in payment of interest had continued more than six months, and the mortgagees, by the terms of the mortgage, were entitled to the possession. The receivers were appointed at the instance of the mortgagees and for their benefit, and the mortgagees are entitled to the earnings from the time of the appointment of receivers. Their title relates back to the time of such appointment. *Boyd* v. *Burke*, 8 Irish Eq. 660. *Howell* v. *Ripley*, 10 Paige, 43. *Astor* v. *Turner*, 11 Paige, 436. *Syracuse City Bank* v. *Tallman*, 31 Barb. 201. *Lofsky* v. *Maujer*, 3 Sandf. Ch. 69. *Moore* v. *Donegal*, 11 Irish Eq. 364. The income after entry belongs to the mortgagees, and the appointment of receivers at their instance is equivalent to an entry. It is an equitable execution against the income and earnings. *Boyd* v. *Burke*, 8 Irish Eq. 660. The $200,000 advanced by the Adams Express Company was not a prepayment, but a loan for which they took notes and stock as collateral security. Had it been a prepayment, it would be no defence. Even a lessee of mortgaged property, (and the rights of Adams Express Company are by no means equal to those of a lessee,) cannot, by prepaying his rent to the mortgagor, retain possession against a mortgagee. Even as against the assignees in bankruptcy, had no receivers been appointed, or had there been no mortgage, and the receivers had been appointed under a creditors' bill, the Adams Express Company could not have claimed carriage of their express matter without cash payment. To permit them to do so would be to give them a preference. *Osgood* v. *Ogden*, 4 Keyes, 70. The receivers were the proper parties to whom payment should be made. *Walcott* v. *Condon*, 3 Irish Ch. 431. The adjudication of bankruptcy did not divest the title of the receivers, nor can the assignees interfere with their possession. *Sedgwick* v. *Minck*, 6 Blatchf. C. C. 156. *In re Clark*, 3 Bankr. Reg. 130. *In re Vogel*, 2 Bankr. Reg. 138. *Freeman* v. *Howe*, 24 How. 450. *Peck* v. *Jenness*, 7 How. 612, 625. *Wiswall* v. *Sampson*, 14 How. 52, 66. *Peale* v. *Phipps*, Ib. 368, 374. *Taylor* v. *Carryl*, 20 How. 583. *Buck* v. *Colbath*, 3 Wallace, 334, 341. *Hagan* v *Lucas*, 10 Pet. 400. The assignees disclaim all right to the earnings. The facts offered to be proved were immaterial and inadmissible.

*B. R. Curtis & R. H. Dana, Jr.,* for the Adams Express Company. The leading purpose of the indenture between the Boston, Hartford & Erie Railroad Company and the trustees, was that the railroad business should be carried on. It puts no limits on the power of those who are to conduct it. If the trustees should come into possession, the leading purpose continues. The property, franchise and contracts vest in the trustees, but still in trust. It is a public franchise, and must be exercised for the public benefit. The indenture creates a trust and agency *sui generis* in its character. The trustees, when in possession, are agents of both the railroad corporation and their creditors. *Blennerhassett* v. *Day,* 2 Ball & Beat. 132. As agents of the former, they cannot repudiate their contract with the Adams Express Company; it passed to them as much as did the lease with the Norwich & Worcester Railroad Company. The indenture is not a mortgage or a pledge. It, as well as the bonds, was executed and delivered upon certain " terms, conditions and agreements " precedent; the first of which was, that the corporation should have the possession and control, the power to make usual contracts, and, with the coöperation of the trustees, the power of sale. The corporation, therefore, was not in possession and control as licensee or tenant of a mortgagee; but upon the fundamental condition precedent of the entire indenture. The powers of the trustees, when in possession for foreclosure, are not derived from, measured by, or analogous to, the powers of a mortgagee in possession. They are to be drawn from and measured by the instrument itself. One overruling general provision is, that in respect to the operation of the road, and the collection of the income, they are to do as the corporation could do and ought to do. The true character of the indenture is, that it is a trust hypothecation by the corporation, with elements of agency and representation conferred by sanction of the state upon the trustees temporarily and conditionally; the two paramount terms being, first, that the railroad business shall be carried on in the usual manner as a public duty and a private right by the corporation, and, in a certain event, by the trustees, secondly, that, so far as consistent with the first term, the debts of the prospective creditors shall be paid.

Even in the case of a strict mortgage of real estate, the tendency has been to sustain, as far as possible, the right of the mortgagor and his assigns in the rents, and to sustain contracts, reasonable and *bonâ fide*, between the mortgagor and others, especially where their object is to carry on the business which is mortgaged, or involved in the mortgage. *Fay* v. *Cheney*, 14 Pick., 399, 403.

Although the mortgagee may have obtained a judgment for foreclosure, and the statute period may have expired, and the execution may have issued, and be in the hands of the officer, the rights of the mortgagee to rents and profits are no greater than if there had been no breach of condition. *Field* v. *Swan*, 10 Met. 112. *Huntington* v. *Smith*, 4 Conn. 235. *Eaton* v. *Whiting*, 3 Pick. 484. *Glass* v. *Ellison*, 9 N. H. 69. *Wilder* v. *Houghton*, 1 Pick. 87. *Mayo* v. *Fletcher*, 14 Pick. 525. *Woodward* v. *Pickett*, 8 Gray, 617. *Wright* v. *Lake*, 30 Verm. 206. *Parkhurst* v. *Northern Central Railroad Co.* 19 Maryl. 472. *Syracuse City Bank* v. *Tallman*, 31 Barb. 201. *Cooper* v. *Davis*, 15 Conn. 556. *Haven* v. *Adams*, 8 Allen, 363. So in case of a judgment creditor. *Bissell* v. *Payn*, 20 Johns. 3. *Rich* v. *Baker*, 3 Denio, 79.

In strict mortgages of real estate, leases do not subsist against a mortgagee in possession, because they are an estate in the land, created in derogation of his fee; and for the further reason that the lessee may redeem. *Haven* v. *Adams*, 4 Allen, 80, 93, and 8 Allen, 363. *Haven* v. *Boston & Worcester Railroad Co.* 3 Allen, 369. *Bacon* v. *Bowdoin*, 22 Pick. 401. *Loud* v. *Lane*, 8 Met. 517. So the holder of a bond to convey may redeem, if entitled to specific performance. *Lowry* v. *Tew*, 3 Barb. Ch. 407.

The analogies of strict mortgages of real estate, which disregard certain rights and equities of third persons who have made prospective contracts with a mortgagor, as against a mortgagee in possession, do not control the present case. And this, not only because the present is a contract *sui generis*, and not a mortgage strictly speaking, but because its purposes and nature imply the right and power of whoever shall be in possession and control of the road, whether the corporation or the trustees, to make such a

contract as the present, valid against everything but the termination of the railroad business by the provisions of the indenture, either on the expiration of the right of redemption, or the conveyance from the trustees to the new corporation. As the corporation, or its assignees in bankruptcy, or any person having a sufficient equitable interest, may redeem within the eighteen months, and the present default is in the payment, not of the principal but of interest only; and as, in the event of payment of interest, the corporation is reinstated *ipso facto*, and bound by this contract, it will be unreasonable and inequitable to terminate the contract simply because the trustees are in temporary and contingent possession.

The advance of $200,000 was, in the view of a court of equity, a prepayment for transportation to be furnished. The provision for the continuance of the contract beyond the five years, if necessary for that purpose, favors that view, and it is not affected by the fact that the corporation gave its notes and some collateral security; for the ability of the road to perform its part of the contract was necessarily contingent.

At any rate, so long as the corporation was in possession and control, the contract must be held to have been binding, and before August 17, 1871, the business must be considered as done by the corporation. The receivers were simply officers of the court; they represented neither the corporation nor the bondholders, but whomsoever it might concern. They were the official stakeholders, with an obligation to keep the stake, namely, the property, business and contracts, in condition, and restore it as nearly as possible *in statu quo ante*. *Booth* v. *Clark*, 17 How. 322. *Wiswall* v. *Sampson*, 14 How. 52, 65. *Ryckman* v. *Parkins*, 5 Paige, 543. *Davis* v. *Marlborough*, 2 Swanst. 108, 118. *In re Colvin*, 3 Maryl. Ch. 278. *Neate* v. *Pink*, 3 Macn. & Gord. 476. *Hutchinson* v. *Massareene*, 2 Ball & Beat. 49, 55. *Sharp* v. *Carter*, 3 P. W. 375, 379. *Boehm* v. *Wood*, Turn. & Russ. 332, 345. *Ellicott* v. *Warford*, 4 Maryl. 80. *Phinnery* v. *Evans*, 11 H. L. Cas. 115. The receivers have no remaining rights or equities. They were fully paid and secured, as a condition precedent to the possession by the trustees. The trustees claim that whatever the

receivers demand by their petition really belongs to the trustees. It clearly belongs to them, if to either; and if the receivers collect it, it is only as the agents of the trustees. That is a capacity they were never appointed to fill, and unknown to the court in this proceeding. If no receivers had been appointed, and the trustees had, on demand, received possession directly from the corporation, as provided for in the indenture, on August 17, 1871, they could not have required the Adams Express Company to pay them for facilities furnished by the corporation before that date.

The Norwich & Worcester Railroad Company and the Norwich & New York Transportation Company cannot claim cash payments from the Adams Express Company, or demand anything in derogation of their right to hold the forty per cent. for the repayment of their advance.

*R. R. Bishop*, for the trustees. There is no privity of estate or contract between the Adams Express Company and the trustees. The case is parallel to that between a mortgagee and tenant under a lease granted by the mortgagor after the mortgage. *Massachusetts Hospital Insurance Co.* v. *Wilson*, 10 Met. 126. *Russell* v. *Allen*, 2 Allen, 42, 44. *Brown* v. *Storey*, 1 Scott N. R. 9, 16. *Smith* v. *Shepard*, 15 Pick. 147. *Fitchburg Cotton Manufacturing Co.* v. *Melven*, 15 Mass. 268. *Waddilove* v. *Barnett*, 2 Bing. N. C. 538. Notes to *Moss* v. *Gallimore*, 1 Smith Lead. Cas. (6th Am. ed.) 843, 849. *Doe* v. *Bucknell*, 8 C. & P. 566.

To fulfil the contract set up by the Adams Express Company would be to apply the property and earnings of the road to the payment of their debt in preference to all others, and in preference to the prior mortgage debt represented by the trustees. *Brown* v. *New York & Erie Railroad Co.* 19 How. Pract. 84. Any person claiming under a contract relating to a mortgaged estate, made after the mortgage, without privity of the mortgagee, must claim subject to the mortgage. *Rogers* v. *Humphreys*, 4 Ad. & El. 299, 313. *Keech* v. *Hall*, 1 Doug. 21. *Haven* v. *Adams*, 4 Allen, 80. *Haven* v. *Boston & Worcester Railroad Co.* 8 Allen, 363, 369. *Henshaw* v. *Wells*, 9 Humph. 568. *Jackson* v. *Fuller*, 4 Johns. 215. *Jackson* v. *Chase*, 2 Johns. 84. *Crosby* v. *Harlow*, 21 Maine, 499.

If the petitioners have lent money to the owner of an equity of redemption, the law provides them relief in another form. They should redeem. General creditors may redeem, in certain instances, as well as subsequent incumbrancers ; and the general creditors of a bankrupt may redeem from his mortgages, first calling upon the assignees to do so. *Francklyn* v. *Fern*, Barnard. Ch. 30, 32 ; *S. C.* 2 Eq. Cas. Ab. 605. *Keech* v. *Hall*, 1 Doug. 21. *Bacon* v. *Bowdoin*, 22 Pick. 401. The bankruptcy of the mortgagor cannot change the priorities of the different classes of creditors, or lessen the rights of mortgagees in possession to the rents and profits.

The alleged facts, offered to be proved as to the Norwich & Worcester Railroad Company and the Norwich & New York Transportation Company, afford no ground for the injunction prayed for. It is immaterial what the terms of a contract were, by which the trustees are not bound. Nor can the petition be supported as in any sense a garnishment of any sums due for rent, or otherwise, from the trustees to the Norwich & Worcester Railroad Company, or the Norwich & New York Transportation Company. These companies are not made parties to this proceeding, and the trustees would have no authority to offset against them any sum which the Adams Express Company should be allowed to retain. If the Adams Express Company have any claim against the Norwich & Worcester Railroad Company, or the Norwich & New York Transportation Company, they have a perfect remedy at law. Both companies are solvent, and able to respond.

WELLS, J. The receivers having, in pursuance of the decision and order of this court, delivered the possession of the railroad and all other property of the corporation into the hands of the trustees under the mortgage, it becomes proper and necessary for the court to direct what disposition shall be made of the earnings of the road, while managed by the receivers, in transporting freight for the Adams Express Company ; or what compensation shall be rendered for that service, and in what mode.

No claim is now made, by either party, that a different rate of compensation should be allowed from that provided for by the

contract between the Adams Express Company and the corporation. The share of earnings that would be due to the corporation, under that contract, is set forth in detail by months, and no objection is made to the correctness of that statement.

The decree, appointing receivers, gave no priority or superiority of right to the parties upon whose application or in whose behalf it was made. Story Eq. § 829. Adams Eq. 355. It had no effect to change the title, or create any lien upon the property. Its purpose, like that of an injunction *pendente lite*, was merely to preserve the property until the rights of all parties could be adjudged. The receivers are officers of the court for this purpose, and act under its direction and control. They continue the operation of the road and the conduct of its business, because this is essential to its proper preservation. They may fulfil the contracts of the corporation so far as beneficial. They may not pay its debts, nor fulfil contracts which are burdensome, or tend to diminish the value of the property in their control, unless such contracts are charged as incumbrances upon the property, or are necessary to its proper preservation and security. They are entitled to repayment of their reasonable expenses and charges, in preference to all other claims upon the property, of whatever nature.

As these proceedings were originally commenced in behalf of the bondholders, after breach of the condition of the mortgage, and for the purpose of foreclosing the same; and as the court has decided that they were entitled to have the mortgage foreclosed, and has ordered possession to be delivered to the trustees for that purpose, it is contended that the taking of possession by the receivers was the commencement of a judicial foreclosure; that it was equivalent to an entry by the mortgagees; or was at least a possession in their behalf and for their use and benefit. The trustees are now party to the proceedings, and have been heard in support of this claim.

The question of the right of the mortgagees to the income of the property, during the pendency of the proceedings by which they have been put into its possession, must be determined by the provisions of the mortgage. It is that alone which can give them any priority.

By that instrument it is provided " that the actual possession, use, management and control of all the granted premises, shall remain with the parties of the first part [the corporation] so long as the said mortgage bonds shall remain without default or forfeiture." It is further provided " that in case default be made by said company in payment of any moneys, either principal or interest, secured hereby, (the default continuing for six months,) the said company shall, on demand of the trustees or trustee for the time being, or his or their agent, authorized thereto in writing, deliver to said trustees or trustee, or his or their agent, the actual possession of all the herein granted premises, and thereupon the said parties of the second part shall and may, by themselves, their officers, agents and employees, take, receive and operate the said railroad, franchises and other property and estate hereby conveyed, and collect, receive and have the rents, income and profits thereof, as fully as the party of the first part could do if no default had been made." Also as follows : " On taking possession as aforesaid, the said trustees shall file in the office of the secretaries of state of the states of Massachusetts, Rhode Island, Connecticut and New York, a written notice, acknowledged before a notary public, that they have taken possession of said mortgaged property, franchises and estate, for default in the payment of principal or interest, or both, as the same may be, and of their purpose to foreclose the said mortgage for said default."

The terms of the mortgage being thus explicit in regard to the mode in which the trustees may reach and control the use of the corporate property and franchises, and appropriate the income thereof, we do not think that any lien or priority of claim upon the income of the road can be acquired by them in any other mode.

Another clause in the mortgage is pressed upon our consideration. It is as follows : " The remedy herein given to said parties of the second part shall not be construed to deprive them or any other parties of their full rights and remedies in the several courts of law and equity in said states, as they exist now or may hereafter exist, and any court of competent jurisdiction may enforce any of the provisions of this instrument."

Whether this provision would authorize a foreclosure and sale of the property and franchises of the corporation, for the benefit of the bondholders, without the intervention of the trustees provided for in the mortgage; and whether, in such case, the income, from the time the receivers took possession, would be treated as incident to and a part of the fund distributable to the mortgagees or bondholders, we need not determine; because these proceedings have not been conducted to that result. The suit having been directed to, and having resulted in possession by the trustees, for the purposes of a foreclosure *in pais*, in pursuance of the provisions of the mortgage first quoted, the effect upon the rights of all parties must be determined accordingly. The lien of the mortgagees attaches to the income only from the time of thus taking possession of the corporate property and franchises.

Against the claim of the receivers to collect these earnings of the road from the Adams Express Company in order to apply the money to the payment of their expenses and charges in operating the road, it is answered that those expenses and charges have already been paid to them by the trustees. This is a sufficient answer to the claim, so far as it concerns the receivers personally. But as officers of the court, representing the interests of all parties, their claim is not at all affected by such payment. The trustees made the payment as an advance, under the order and direction of the court, for the protection of the receivers from personal loss and responsibility. This was necessary in order to bring the operations of the receivers to a close; and on account of the delay required for adjustment of the various claims growing out of those operations, and for the final settlement of their accounts. But the trustees are entitled to have those claims adjusted, and those accounts settled, precisely as if no such advance had been made by them; and to be indemnified for the amount thus paid by them, so far as it was applied to expenses and charges in managing the ordinary business of the corporation while in the hands of the receivers. So far as it was applied to the repayment of advances made or liabilities incurred by the receivers for permanent improvements, or for securing rights or advantages for the benefit of the principal property and franchises

covered by the mortgage, the trustees have their indemnity in the advantages thus secured, and have no priority of claim upon the previous earnings of the road for its repayment.

It was decided at the former hearing, that the contract with the Adams Express Company gave them no lien upon the property or rights of the corporation; that the receivers were under no obligation to fulfil it, either by performing the service stipulated for, or by applying any earnings of the road, while managed by them, to the payment of the debt of the corporation. But as the receivers were acting only provisionally, they were directed to continue the performance of the service as required by the contract, upon receiving security for the payment of proper compensation therefor, if and as it should ultimately be ordered by the court. The receivers have no interest in requiring that compensation to be made, except for the repayment of their expenses and charges. If not needed for that purpose, they have no occasion to interfere with the application of those earnings in the manner provided for in the contract, unless some other right is shown, superior to that of the Adams Express Company under the contract, which requires that the fund be administered upon by the court.

The corporation has no such right. The general creditors are not parties to the suit; and it is not instituted in their behalf or for their benefit. It does not partake, in any degree, of the nature of a proceeding in insolvency. As already shown, the bondholders and the trustees under the mortgage have no lien upon these earnings, and no priority of claim upon them.

Bu· it appears that, shortly after the receivers took possession, the corporation was adjudged bankrupt under the laws of the United States, and, in pursuance of those laws, all its property, rights and franchises were conveyed to assignees appointed for that purpose. All parties interested having acquiesced in that adjudication, and no question being made here as to the application of the bankrupt laws of the United States to such corporations, we must regard those proceedings as valid and binding upon the rights of all parties for the purposes of this case. The assignees have appeared to represent their interests in the subject

matter of the controversy, and have assented that the fund be ordered to be paid over to the receivers.

The effect of the assignment was to transfer to the assignees all rights of the corporation, leaving all its unsecured obligations to be adjusted alike, and entitled only to their proportionate share in the final distribution. But for the possession by this court through its receivers, the assignees would have had possession of the road, and would have taken all its earnings, without any obligation or right to apply any portion of them to the debt of the Adams Express Company as provided by their contract. The right being thus in the assignees, the court is bound to recognize and give effect to that right, in directing the action of its receivers, and in disposing of the fund.

The right to redeem the property from the mortgage is in the assignees. Payment of this fund to the trustees through the receivers will enure to the benefit of the assignees by reducing *pro tanto* the mortgage debt. The court, having control of the fund, and its custody, constructively, is bound to make that disposition of it which is required by the parties having the superior right.

The receivers therefore will be required to collect, for the use and benefit of the mortgagees, so far as not required for their own expenses and charges remaining unpaid, all earnings of the road from the time the assignment in bankruptcy took effect. That date is said to be October 20, 1870.

As to the earnings of the road, under this contract, prior to that date, if the receivers did not derive, from other sources of income, an amount sufficient to cover their expenses and charges in operating the road and managing the business of the corporation, they will be entitled to receive from these earnings such sum as will make up the deficiency during that period; or to collect the whole, if it does not exceed that deficiency. No other ground of claim to the earnings prior to October 20, 1870, appears to us to have been maintained by any party.

The evidence offered to show that the Adams Express Company were induced to enter into the contract, and to make the large loan of money to the Boston, Hartford and Erie Railroad Company, by certain representations of the Norwich & Worcester

Railroad Company and of the Norwich & New York Transportation Company, to the effect that they could safely enter into that contract and make such loan, could not affect any of the questions under consideration. Even if those corporations were bound or estopped by the statements made by their officers, there is nothing alleged, or offered to be proved, which would entitle the Adams Express Company to any set-off or recoupment here. It is not shown nor alleged that those corporations have refused to transport express freight as stipulated by the contract it should be done; nor that the Adams Express Company have paid any money or are liable to pay any for such transportation; nor that the performance of the contract on the part of the Boston, Hartford & Erie Railroad Company, and of the receivers, has in any respect failed by reason of any inability or want of authority on their part to contract for and to furnish the requisite facilities for transportation over the whole line to New York.

We do not understand that this claim is made upon the ground of false representations as to the solvency or credit of the Boston, Hartford & Erie Railroad Company. It is not alleged that the statements were in writing; without which they would not avail.

If any claim on account of such representations could be maintained against either of those other corporations, it is too far collateral to this contract to constitute any defence, either in whole or in part.

By the lease of the Norwich & Worcester Railroad, which the receivers assumed, they controlled the entire transportation through to New York; and were thus enabled to furnish and did furnish to the Adams Express Company the full extent of service stipulated for by the contract. In neither contract is the consideration or compensation apportionable. No part of that which is to be rendered by the Adams Express Company to the Boston, Hartford & Erie Railroad Company is specifically applicable to the transportation over the other two lines; and no part of that which is rendered by the Boston, Hartford & Erie Railroad Company, or by the receivers, to the Norwich & Worcester Railroad Company, is specifically for receipts from transportation of express freights. What precisely are the arrangements with the

Norwich & New York Transportation Company does not appear.

The proposed proofs therefore furnish no ground, either for apportioning the sums due to the receivers under the contract, or for directing them to retain, for the benefit of the Adams Express Company, or to withhold payment of any portion of the sums payable to the other two corporations on account of transportation of express matter over those lines.

For the purpose of determining whether the receivers are entitled to collect any portion of the earnings of the road, under the contract, prior to October 20, 1870, and if so. how much, the case will stand for hearing before a master ; unless the matter shall be otherwise adjusted by the parties. The earnings for the month of October are also to be apportioned. The amount to which the receivers are entitled being thus determined, a decree will be entered for its payment. *Ordered accordingly.*

The petition of the Adams Express Company against the trustees presents questions in some respects differing from those presented as against the receivers. The trustees are not officers of the court, and do not act under its direction. Their possession and right of possession are confirmed by the decree of the court. But beyond that they stand upon their own rights as mortgagees. For the extent and measure of those rights the instrument of mortgage is the guide.

The petitioners deny that that instrument is, in its legal construction and effect, a mortgage. By its form and terms it professes to be a mortgage ; and it is executed and recorded as such. It is made in accordance with legislative authority, specially given for the purpose, to secure the bonds of the corporation. We cannot doubt that it should be construed according to the manifest intent and purpose, both of the parties and of the legislature ; and have effect to convey the legal title to the property and the rights which it describes. It is not the less a mortgage that it applies to property both real and personal, corporeal and incorporeal.

But if it were not a mortgage strictly, in legal effect, the court would, in equity, give it such operation as would secure the rights

of the bondholders according to the obvious purpose of the instrument. Adams Eq. 122.

The contract of the petitioners confers no rights which attach by way of lien upon the property or franchises of the corporation. If it were otherwise, as it was made subsequent to, and with full notice of the mortgage, it must be held subordinate to that incumbrance. Against the mortgagees, or against the property of the corporation in their rightful possession, it could have no force, unless the mortgage by its terms reserved to the corporation the power to make contracts, in respect to the conduct of its business, which should be binding upon the mortgagees.

It is contended that the mortgage does reserve such a power, or rather, that it is implied from the terms of the mortgage and the nature of the rights which are transferred by its operation. The argument is, that the mortgage contemplates the transfer, not only of property and franchises, but also of the current business of the corporation; that such business implies continuance of operations, services and relations entered upon under contracts previously made. It is urged that the trustees, when they enter for breach of condition, take up the business of the corporation, without interruption, as they find it organized by the previous action of the corporation, with the arrangements and contracts incident to it; that this involves, almost necessarily, the execution by the mortgagees of contracts previously made by the corporation; and that, from the nature of the case, all contracts which are incident to and reasonably necessary or proper for the establishment and maintenance of such business must be within the authority of the mortgagors, while retaining control of the property, to make for the future as well as the present operation of the road.

If this were to be conceded, so far as relates to the mode of conducting the operations of the road, and the rates of compensation for service, it would fall short of the requirements of the case of the petitioners. To hold the mortgagees bound to render service without compensation, on the ground of a contract therefor and prepayment to the mortgagors, would involve the right of the mortgagors to defeat entirely the security thus given, by depriving the property of its capacity to yield available income.

But we do not think the first position is maintainable. The mortgagees, upon entering into possession, do indeed take the business of the corporation already organized under contracts made by the mortgagors. The continuance of that business is the continuance of the arrangements and contracts under which it is conducted, and those contracts are carried forward by implication and the acquiescence of the mortgagees. It is a matter of practical expediency. But it is the acquiescence of the parties, and not the obligation of the contract itself, which thus continues it in operation. The title and right of the mortgagees are superior to those of the mortgagor, and cannot be bound by the contracts of the mortgagor unless authority therefor is given or reserved in explicit terms. We find no such terms in the mortgage itself; and we see nothing in the nature of the business of a railroad corporation, which necessarily involves such an implied authority. The case is not, in this respect, unlike that of real estate, the ordinary income of which is derivable from its occupation by many tenants paying rent. The mortgagee, entering in the middle of a quarter, may permit the tenants to remain until the rents are due, when he may collect the rents for the whole quarter, receiving thus the benefit of the contracts of the mortgagor. It would probably be for the interests of both that the contracts of the mortgagor should thus be adopted by the mortgagee. But no authority to make leases, binding upon the mortgagee, could be implied from the reasonableness or the probable advantages of such contracts. If the mortgagor should undertake to bind the estate by a lease in which the rent for the whole term was paid in advance, there would be no doubt of his incapacity so to do, as against the mortgagee taking possession.

The principle seems to us to be the same in the two cases. The mortgagee, coming in by a superior title, takes the subject of his mortgage clear of all obligations contracted by the mortgagor, whether personal to himself or relating to his management of the property. If he continues in operation the arrangements of the mortgagor, or fulfils or accepts the fulfilment of contracts previously made, they become binding upon him only so far as he adopts them and because he has adopted them. He is not per

sonally bound, nor is the property in his hands chargeable other-wise.

We are satisfied that it was the right of the trustees to refuse all performance or recognition of the contract of the petitioners with the corporation, and to require not only payment of compensation for transporting their freights, but that the rate of compensation and terms of the service should be subject to a new arrangement, as if no contract had existed.

The right of the mortgagees is an absolute one. There is no contingency which would justify the court in interfering to enable the petitioners to give security for the payment of such sum only as shall be found to be necessary for the payment of interest in arrear upon the bonds. The mortgagees are entitled to the whole property and all its income, until payment has been made in fact. *Gooding* v. *Shea*, 103 Mass. 360. It is a legal right which cannot be limited. Neither the equity nor the facts of the case warrant any such disposition of it.

The parties must be remitted to their legal rights.

*Petition dismissed.*