Upson, Assignee, etc., vs. The Milwaukee National Bank of Wisconsin.

by a wrong baptismal or christian name was intended. See, also, *Begg v. Begg*, 56 Wis., 534, and cases therein cited. The late case of the *State ex rel. v. Timme*, 56 Wis., 423, is in point, where the error was leaving out the word " Wisconsin " from the corporate name of the Northern Agricultural & Mechanical Society. It was held that the society intended was easily ascertainable by reference to the laws themselves, and the error was immaterial.

The real intention of the parties as to who was the mortgagee, and that the mortgage was delivered to the plaintiff and the loan made by the plaintiff, and that the note and mortgage were delivered to the plaintiff by such name, were admitted by not being denied, and thereby the error was cured as well as explained as much as if it had been proved.

*By the Court.*— The appeal is dismissed, and the cause remanded for further proceedings according to law.

---

UPSON, Assignee, etc., vs. THE MILWAUKEE NATIONAL BANK OF WISCONSIN.

*April 5 — May 31, 1883.*

VOLUNTARY ASSIGNMENT: *Payment of taxes by assignee.*

1. *It would seem* that subd. 13, sec. 2, ch. 194, Laws of 1879 (amending sec. 1700, R. S.), was not intended to require payment by an assignee, out of other funds, of the taxes upon mortgaged property of which the equity of redemption in his hands is worthless.
2. A mortgagee who did not prove up his claim after a voluntary assignment by the mortgagor, nor obtain possession of the mortgaged premises, nor intercept the rent, but remained dormant until the assignee had collected the rent and distributed the same to the general creditors under the orders of the court and such distribution had been confirmed, is in no position to make such assignee account to him as for a misappropriation of the rent or to compel him to pay taxes upon the mortgaged premises.

Upson, Assignee, etc., vs. The Milwaukee National Bank of Wisconsin.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

"On February 17, 1881, Frederick Gunther made a voluntary assignment of all his property, both real and personal, for the benefit of his creditors, to *Edwin Upson.* The assignment was properly executed, certified, and filed, and *Upson* accepted the trust and gave the requisite bond. Among the property so assigned was the north third of lot 7, block 10, Third ward, Milwaukee, with the stone building thereon, assessed for taxation at $13,000. On December 10, 1881, the assignee petitioned for an examination, allowance, and settlement of his accounts therewith rendered, and for the declaration and payment of the proper dividend, and his discharge from the trust; and stated that the real estate assigned was in such a condition, by reason of being mortgaged to various parties for more than it was worth, that nothing could be realized therefrom. Among the moneys received by and charged to him in his account was $400, by rent of store six months; and among the expenditures credited to him were two items of insurance on store, amounting to $46.75. The court declared a dividend of something over thirty per cent., and directed payment of the same to the several creditors who had proved their claims, which was done, and the same was reported to and approved by the court, and an order and judgment entered discharging or purporting to discharge the assignee from his trust, and his sureties from all further liability.

"Among the liabilities of the insolvent was a note of $10,000 given and belonging to the appellant bank, secured by mortgage on said real estate, and a note of $5,000 given to Huessmann, also secured by mortgage on the real estate, and which note and mortgage had been transferred to and belonged to the bank. Neither of these mortgage debts was proved up as a claim against said estate. Subsequently to the entry of said order and judgment, the bank commenced the fore-

closure of said mortgages, and thereafter, applied to the court, upon verified petition, stating the facts, and notice, for the opening, vacating, and setting aside said order and judgment, on the ground that the assignee had failed to pay the taxes on the real estate, and asking for an order directing him to pay the same, and, in case of his refusal or neglect, that the bank have leave to sue on his bond. On the hearing of the application it was made to appear that all requisite notices had been given by the assignee as required by law, and the court denied the application, without costs and without prejudice, seemingly on the ground that a term of the court had elapsed since the rendition of the judgment, and that the right of action on the bond, if any, existed without first obtaining leave of the court. From that order the bank appealed."

The cause was submitted for the appellant on the brief of *Finches, Lynde & Miller.*

*A. G. Weissert,* for the respondent.

CASSODAY, J.   Confessedly the mortgages held by the bank were valid liens upon the real estate in question prior to the assignment. Being such, the assignee merely took the title subject to the mortgages. He reported that the land was mortgaged for more than it was worth, and that nothing, therefore, could be realized from it for the general creditors. The equity of redemption being worthless, was the assignee bound to make expenditures thereon from moneys coming into his hands from the general assets, in order to increase the value thereof for the benefit of the mortgagee? The contention is that the assignee should have paid the taxes on the mortgaged premises. It is true, subd. 13, sec. 2, ch. 194, Laws of 1879, amended sec. 1700, R. S., by adding: "But before making any dividend the assignee shall pay all taxes assessed upon the property assigned which remain unpaid." Here the assignee did not sell the land upon which

Upson, Assignee, etc., vs. The Milwaukee National Bank of Wisconsin.

the taxes in question were assessed. If he received no moneys for the use of the land after his appointment, then it is difficult to see upon what equitable grounds he should be required to pay taxes from other funds.

The amendment requiring the payment of all taxes assessed upon the property assigned was, probably, to prevent the sale and conversion of such assigned property into money, and the distribution thereof to the creditors without paying the taxes assessed thereon. True, the equity of redemption in the mortgaged premises was in fact assigned, but, acting for the general creditors, he soon after discarded them altogether, unless it was as to a portion of the rent. The amendment to the statute was, probably, to give the state and municipality a preference over other creditors in the payment of such taxes out of the moneys arising from the assigned property. Here, the taxes being assessed upon real estate, there was no danger of their not being collected. Certainly it could not have been the purpose of the amendment to authorize the taking of moneys equitably belonging to one class of creditors and applying them to the use and benefit of another class of creditors.

It would seem that the only plausible reason for urging that the assignee was bound to pay the taxes in question is upon the supposition that he had moneys in his hands which accrued as rent of the mortgaged premises after the assignment. But the appellant's petition is silent as to any rent for the use of the mortgaged premises having accrued to, or been received by, the assignee after the assignment. The application to open the judgment was not based upon the theory that any such rent had accrued or been received. No such claim was made therein. It is true, the assignee's report showed that he had received $400 for rent of store six months, but the record is silent as to whether it accrued before or after the assignment. If it was before the assignment, then it was simply a debt due the estate at the time

of making the assignment. But assuming that it accrued to and was received by the assignee after the assignment, then what were the rights of the mortgagee with respect to such rent?

It appears from the record that every creditor, on pain of being debarred of any dividend from the estate, was notified to file his affidavit of claim as required by sec. 1698, R. S. By the statute every creditor who did not so file such affidavit within the time limited, was prohibited from participating in any dividend made before his claim should be filed. Sec. 1700, R. S. Confessedly, the bank filed no affidavit of either of the claims so secured by mortgage. Having so failed to prove such claims, it was precluded by the statute from any share in the proceeds of the general assets so distributed. Having no right to any share of the funds arising from the general assets under the statutes and the assignment, it would seem to be in no position to hold the assignee accountable for an alleged wrongful distribution of such funds. If it was unwilling to rely upon the mortgaged premises for security, it should have made itself a party to the insolvent proceedings by proving up its claim for deficiency, and making its·objections at the time and in the manner prescribed by ch. 80, R. S. Having failed to do any of these things, it was necessarily remitted to the rights and remedies of a mortgagee. Manifestly, these rights and remedies, as to such secured claims, were simply those of mortgagee, and not those of a claimant of a dividend from the proceeds of the general assets. Have any of those rights been invaded, and if so, was the application made the proper remedy?

As such mortgagee, the bank might have commenced proceedings to foreclose the mortgages, and, upon a proper showing, procured the appointment of a receiver, and thus secured to itself the benefits of the rents and profits. But even then it would have been confined to such as accrued during

the pendency of the suit. *Argall v. Pitts*, 78 N. Y., 239. Even when the law was such as to make the title of the mortgagee absolute on condition being broken, yet then, it was said in effect by Lord Chancellor HARDWICKE, that where a mortgagor was left in possession, upon a bill brought by the mortgagee for an account, rent and profits would not be allowed for any of the time prior to the filing of such bill. *Higgins v. York Buildings Co.*, 2 Atk., 107. To the same effect are *Colman v. The Duke*, 3 Ves. Jr., 25; *Drummond v. The Duke*, 5 Ves. Jr., 433; *Hele v. Bexley*, 20 Beav., 127. So it has been held that the heirs of a deceased insolvent were entitled to the rents and profits of the estate of the deceased until it was sold for the payment of the debts; or, if it were mortgaged, until entry by the mortgagee. *Gibson v. Farley*, 16 Mass., 280. So it has been held that the rents and profits actually received by the mortgagor, or equitable owner in possession, or which had accrued before an order of sequestration was made, could not be recovered from him by the mortgagee. *Clarke v. Curtis*, 1 Grat., 289. So it has been held that a receiver, appointed in a suit to foreclose a mortgage, could not maintain a suit to recover earnings of the road accruing before his appointment. *Noyes v. Rich*, 52 Me., 115. So it has been held that a mortgagee is not entitled to the rent of the mortgaged premises from the tenant of the mortgagor till he takes possession or requires the tenant to attorn to him, and that prior to such time the mortgagor or purchaser of the equity of redemption is entitled to the rent. *Long v. Wade*, 70 Me., 358. "So long as the mortgagor is allowed to remain in possession he is entitled to receive and apply to his own use the income and profits of the mortgaged estate. He is not liable for rent. His contract is to pay interest and not rent." Jones on Mortg., sec. 670.

In *In re Snedaker*, 4 Nat. B. R., 168, the mortgaged premises had been sold, and the mortgagee had proved up his claim

for a deficiency, but it was held that "products of the mortgaged premises reduced to possession by the mortgagor's assignee in bankruptcy prior to sale of the mortgaged premises, are to be treated as assets, to be distributed under the bankrupt act, and the mortgagee cannot claim that a deficiency after sale on his mortgage shall be paid in preference to the claims of other creditors."

In *Foster v. Rhodes*, 10 Nat. B. R., 523, it was held by Judge BENEDICT, and concurred in by Mr. Justice HUNT, that " where an assignee in bankruptcy receives the rents of mortgaged property, it must be distributed among the general creditors of the bankrupt. If the mortgagee desires it to be applied specifically to his lien, he must not only show the insufficiency of his security, without the pernancy of the rents and profits, but he must also intercept the rent before it can reach the assignee." In that case the mortgagee petitioned that the assignee be directed to repay him, out of the rents so received by him, the amount of certain taxes on the mortgaged premises which he had been compelled to pay in foreclosure proceedings to his detriment; but the prayer of the petition was denied, and the judge said he could "see no principle by which the rents in the hands of the assignee can be held to be charged with the taxes so paid."

In *In re Bennett*, 12 Nat. B. R., 257, it was held that "the filing of a bill for the sale of the property free from incumbrances does not have the effect to give the mortgagee a right to the rents thereafter collected. The assignee is entitled to the rents of mortgaged property until the mortgagee claims them. The filing of a petition in court and notice thereof to the assignee is sufficient to entitle the mortgagee to rents *thereafter* accruing." To the same effect is *Ellis v. B., H. & E. R. R. Co.*, 107 Mass., 1.

The case of *In re Bennett*, *supra*, was decided by Chief Justice WAITE, and supported by an elaborate opinion, in which he said: "The theory is that until the mortgagee actually in-

tervenes to assert his right to the profits of the land, they may be rightfully received and appropriated by the mortgagor, and those to whom he assigns. The unqualified assent by the mortgagee to the possession by the mortgagor or holder of the equity of redemption, is equivalent to a license to occupy and to enjoy all the benefits of the occupation. Until this license is revoked, the possession is lawful, and he who is under it cannot be charged as a wrong-doer. . . . Mrs. Bennett, . . . as mortgagee, ·. . ·. after condition broken, had the right to proceed at once to subject the accruing rents and profits of the land to the payment of her debt. For this purpose all the remedies known to the law in such cases were open to her. This right was one of the incidents of her mortgage. She might exercise it or not, as she chose. If she lay by, and, without objection, permitted the owner of the equity of redemption to appropriate the profits of the land to his own use, her power over such as he appropriated was gone. Until she acted her right was dormant. It only had effect when it was exercised. The assignee in bankruptcy is especially the representative of the unsecured or general creditors. He is not the agent or representative of secured creditors who do not in some form make themselves parties to the bankruptcy proceedings. He cannot deprive a secured creditor of the benefit of his security, neither is it any part of his duty to enforce the security rights of such a creditor. To charge him as the agent or representative of such a creditor for such a purpose, it must in some form appear that he has been specially required to perform that duty."

The views thus expressed seem to be sound, and applicable to the case before us. To them nothing need be added. From them it logically follows that the mortgagee, not having proved up his claim against the insolvent's estate, nor obtained possession of the mortgaged premises, nor intercepted the rent, but having remained dormant until after the assignee had collected the rent and distributed the same to the

general creditors under the orders of the court, and such distribution having been confirmed by the judgment of the court, is in no position to make such assignee account to him as for a misappropriation of the rent, nor to compel him to pay the taxes upon the mortgaged premises.

*By the Court.*— The order of the circuit court is affirmed.