## UNION LOAN & TRUST CO. *v.* SOUTHERN CAL. MOTOR ROAD CO.

*(Circuit Court, S. D. California.* February 8, 1892.)

STREET RAILWAYS—FORECLOSURE OF MORTGAGE—RECEIVERS.

In the foreclosure of a mortgage against a street-railway company, the receiver will not be directed to pay out money in his hands for the purpose of grading and macadamizing the street along and between the rails, in accordance with an order of the town trustees, when there is no lien in favor of the town for such an expenditure.

In Equity. Suit by the Union Loan & Trust Company, trustee, against the Southern California Motor Road Company, to foreclose a mortgage. Application by the city of San Bernardino for an order directing the receiver to pay out certain moneys for grading and macadamizing the street. Refused.

*Rolfe & Freeman* and *John Brown, Jr.,* for city of San Bernardino.

*S. M. White,* for receiver.

*E. H. Lamme,* for complainant.

Ross, District Judge. This is an application by the city of San Bernardino for an order directing the receiver in possession of the property of the defendant company to pay out certain of the moneys in his hands, as such receiver, for the purpose and under the circumstances hereinafter stated. A part of the property of the defendant company of which the receiver took possession under his appointment was a street railroad on E street, in said city, built by R. W. Button, the assignor of the motor road company, under and by virtue of an ordinance of the city granting him the right to do so, which did not designate the kind or character of rails to be used, or how they should be laid, but did require that—

"Said Button shall macadamize the entire length of the street used by his tracks between the rails, and two feet on each side of said track; also be-

tween the tracks at those points where there may be turn-outs, side-tracks, or switches, and shall keep the same constantly in repair, flush with the grade of the street as it now is, or may hereafter be established by the board of trustees, with good crossings."

The road was built with T rails laid on ties. It was operated at heavy loss by Button's assignee, the defendant motor company, and, although the losses were much reduced by the receiver, its operation continued a non-paying business. On the 21st of April, 1891, the board of trustees of the city passed a resolution of intention to order a certain portion of E street on which the street railroad was constructed to be graded and macadamized, except such portions thereof required by law to be kept in order or repair by any person or company having railroad tracks thereon; and on the 4th day of August following, it ordered the work to be done. The board of trustees then notified the receiver to remove the T rails and ties in use on the road, and replace them with stringers and flat rails. The receiver, in acknowledging the receipt of the notice, declined to comply with the requirement contained in the order of the board, upon the ground that it was contrary to the franchise under which the road was constructed, and informed the trustees that, upon the return of the judge of the court to the district, — he then being in San Francisco holding court,—he (the receiver) would recommend an abandonment of the franchise, not only as respected the portion of the street proposed to be graded and macadamized, but for the entire line. A few days after this, to-wit, on the 25th of August, the board of trustees passed a resolution directing, among other things, that R. W. Button, his successors or assigns, grade and macadamize that portion of E street mentioned in the resolutions of April 21st and August 4th, between the rails and for two feet on each side thereof. On the 8th day of September, 1891, the court, for good cause shown, made an order authorizing and directing the receiver, among other things, to abandon the franchise under which the road was constructed and operated, and to remove the rails and ties from the street, which he did. The position of the city now is that there is an equitable obligation upon the defendant company to pay for grading and macadamizing that portion of the street described in the resolution of August 25th, falling between the places where the rails existed before their removal, and for two feet on each side thereof.

In view of the fact that the board of trustees, without the slightest legal or equitable right so to do, adopted an order requiring the receiver to take up the T rails and ties with which the road was built under the franchise theretofore granted to Button, and to replace them with stringers and flat rails, it is by no means clear that the equitable obligation contended for by the city exists; for such a costly change in the construction of a non-paying road would probably have been worse than its confiscation. And when it is remembered that the board of trustees notified the receiver to make that change without any right to do so, it is not easy to see any good ground for complaint on its part that the objectionable rails and ties were removed from the street, nor any just ground to complain that they were not replaced with stringers and flat

rails. But if it be conceded that there is some sort of moral obligation resting upon the defendant company to pay for the grading and macadamizing in question, it would not, upon well-settled principles, justify the court in directing the receiver to make such payment out of moneys in his hands. It is not pretended that any lien exists upon any of the property of the defendant company for the proposed work. Nor is it pretended that there was any specific contract on the part of the company for the payment of the proposed work. Even if there had been such a contract, the receiver could not properly be required to pay the money as requested; for, as there is no lien, such payment would be, in effect, to give a preference to such indebtedness. High on Rec. §§ 391, 398; *Ellis* v. *Railway*, 107 Mass. 1. In the case of *Southern Exp. Co.* v. *Western N. C. R. Co.*, 99 U. S. 191, the contract between the express company and the railroad company was that the latter should give to the former the necessary facilities for the transaction of all its business upon the road; forward, without delay, by the passenger trains, both ways, all the express matter that should be offered; do all in its power to promote the convenience of the express company both at the way and terminal stations; and carry free of charge the messengers in charge of the express matter, and the officers and agents of the express company passing over the road on express business. The consideration for these stipulations was a loan by the express company to the railroad company of $20,000, to be expended in repairs and equipments for the road, the loan to bear interest at the rate of 6 per cent. per annum, and the payment of 50 cents per 100 pounds for all express matter carried over the road, to be applied in discharge of the loan and interest. The contract was to continue for one year from the 1st day of January, 1866, and until the principal and interest of the debt should be fully paid. The bill averred that the receiver had refused to carry out the contract, and that the principal of $20,000, and a part of the interest, were unpaid. Among other things, the court said:

"There is another objection to the appellant's case which is no less conclusive. The road is in the hands of the receiver, appointed in a suit brought by the bondholders to foreclose their mortgage. The appellant has no lien. The contract neither expressly nor by implication touches that subject. It is not a license, as insisted by counsel. It is simply a contract for the transportation of persons and property over the road. A specific performance by the receiver would be a form of satisfaction or payment which he cannot be required to make. As well might he be decreed to satisfy the appellant's demand by money as by the service sought to be enforced. Both belong to the lienholders, and neither can thus be diverted. The appellant can therefore have no *locus standi* in a court of equity."

The application is denied.