CHARLES H. KOEHNE, JR., Trustee *vs.* PETER BEATTIE *et als.*

APRIL 24, 1914.

PRESENT: Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)  Deeds.  Construction.*

By deed grantor conveyed to a trustee premises bounding 100 feet on the east and west and 150 feet on the north and south upon trust to permit the wife of grantor to occupy the same during her life, and upon her death providing the youngest of the children had attained the age of 21 years to convey. the premises in fee to such of the children as might be living.  Then followed this provision  "upon this further trust that the said trustee shall within such reasonable time as the court of probate shall appoint convey to the highest bidder at public auction two lots fifty feet front (on the south) and running back (to the north b'ound) from off each side of the above-mentioned premises and invest the purchase money and hold such funds as security for the payment of the sums to be paid by me (until the death of his wife) and after her decease as security for (the payments to be made to his children) and

after such payments have ceased to be obligatory upon me to transfer such securities to me my heirs and assigns." This last provision was later modified "that within three years from the date of the trust deed the said trustee may sell the said lots described as aforesaid in such way as he may judge best, but after three years if said lots are unsold the obligations of said deed relating to the above-described condition shall remain in full force." Within the three years the trustee conveyed from the west portion of said premises a parcel of land bounding 50 feet on the south and running back 100 feet to the north bound.

*Held,* that the provision of the deed as to the conveyance of the two lots was repugnant to the former provision in reference to the occupancy of the premises by the wife of grantor for life and the subsequent conveyance to the children.

*Held,* further, that the intent of grantor as disclosed by the deed, which should be construed from the standpoint of the parties at the time of its execution, taking into consideration also the other instruments simultaneously delivered as part of the general scheme of the grantor, must be ascertained.

*Held,* further, that the intent of grantor was to furnish an income for his wife for life and to provide for the maintenance of the children, in addition making provision for a home for the use of the wife for life and for the conveyance of said home at her death to the children who should survive her and attain the age of 21 years. That in addition to the other security given by grantor for the performance of his covenants, the second proviso of the deed made the two lots and the proceeds of the sale thereof in like manner collateral security for the payments, and such purpose of grantor would be effected by giving the wife the use of the house and the middle lot on which it stood, and by its conveyance after her death to the children.

*Held,* further, that it was the intent of grantor that the two lots were to be sold and the proceeds held only as collateral security and when the trusts were executed such proceeds were to be transferred to him.

*Held,* further, that it being the intent of grantor to convert the two lots into personalty, the lot not sold would be treated as personalty and hence the words "to transfer such securities" were apt to require the conveyance of the unsold lot to the representatives of grantor.

*(2)   Deeds.   Repugnancy.*

In case of repugnancy, effect should if possible be given to every part of a deed, consistent with the rules of law and the intention of grantor, otherwise the part which is repugnant to the intention is rejected.

*(3)   Trusts.   Vesting of Legal Estate.*

Where the creator of a trust provided that upon the death or resignation of a trustee the probate court should appoint a new trustee, but made no provision for the vesting of the real estate in the new trustee and there was no apparent reason for a departure from the ordinary rule of conveyance, upon the appointment of a new trustee after the death of a former, the legal title to the real estate remained in the heirs of the former trustee.

*(4)   Trusts.   Statute of Uses.*

Where a trust has been fully executed except a compliance with the direction
to convey to the ultimate beneficiaries the transfer of the legal title is not
effected by the statute of uses, but a conveyance by the trustee is required.

BILL IN EQUITY for instructions by trustee.

BAKER, J.   The complainant, Charles H. Koehne, Jr.,
of Newport, in this State, has filed a bill of complaint and
has presented therewith his account as trustee and asks
that said account be examined and allowed and that he be
discharged as trustee.   He also requests instructions as to
his duty relative to the disposition of the trust funds in
his hands and of certain real estate which has been under his
control as trustee.

He represents that he has acted as trustee, by appoint-
ment of the probate court of the City of Newport, under
certain deeds of trust mentioned in said bill.

The parties respondent are Peter Beattie and John
Beattie, Jr., both of Leete Island, in the State of Connecticut,
as executors and trustees under the last will and testament
of John Beattie, deceased, David Beattie of said Leete
Island, Charles J. Beattie of said Newport and Mary E.
Sullivan, formerly known as Emily Beattie, of the Borough
of Brooklyn, in the County of Kings, State of New York.

They have all appeared and filed answers admitting the
allegations of fact contained in the bill and have all joined
in the prayer for instructions in answer to the ten questions
set out in the twenty-eighth paragraph of the bill.

The bill is here by certification from the Superior Court.
The material facts as stated in the bill are in substance these:
By an indenture bearing date April 19, 1877, to which
John Beattie, of Guilford, in the State of Connecticut, and
Mary Beattie and Samuel Engs, both of said Newport, were
parties, the said John Beattie covenanted with the said Mary
Beattie and with said Samuel Engs and his successors in the
trust hereinafter mentioned to pay "to the said Samuel
Engs or his successor or successors, on the second day of each

January and July during the natural life of said Mary
Beattie, the sum of three hundred dollars in trust for the
sole and separate use of the said Mary Beattie," and also
on said days to pay to said Engs or his successor or successors
three hundred dollars, that is to say, one hundred dollars each
for the care and maintenance by the said Mary of the said
David Beattie, Charles Beattie and Emily Beattie (called
in the bill Mary E. Sullivan), until they respectively reached
the age of twenty-one years or married or died within that
age.   By a deed of the same date said John Beattie conveyed
to said Samuel Engs "a certain parcel of land with a dwelling
house thereon standing, situated, lying, and being in the
town and County of Newport, in the State of Rhode Island,
and bounded as follows, namely:    on the east by land of the
Old Colony Railroad Company, one hundred (100) feet;
on the west by land of Philip Caswell one hundred (100)
feet; on the north by land of the heirs of John Caswell,
deceased, one hundred and fifty (150) feet; on the south
by Walnut Street, one hundred and fifty (150) feet, To Have
and To Hold the above granted and bargained premises,
with the appurtenances thereof unto him the said Samuel
Engs, his heirs and assigns, upon trust to permit Mrs.
Mary Beattie, of said Newport, with her children, David
Beattie, Emily Beattie and Charles Beattie to use, occupy,
possess, improve and enjoy the said premises, with the
appurtenances free from rent, or at the election of said Mary
to permit her to take the rents and profits of said premises
and appurtenances during the natural life of said Mary
Beattie, and upon her death, providing the youngest of said
children then living shall be twenty-one years of age, to
convey the said premises and appurtenances in fee to the
said David Beattie, Emily Beattie and Charles Beattie
or to such of them as may at that time be living," with
certain other provisions in the event that said children should
die in the lifetime of said Mary or all should die without
issue before the youngest  became twenty-one years old,
which provisions are not now important.   Then immediately

follows this provision: "And upon this further trust, that the said Samuel Engs shall within such reasonable time as the court of probate for the district of Newport shall, in its discretion, appoint, convey in fee simple to the highest bidder at public auction two lots fifty feet front on Walnut Street and running back to the premises of heirs of John Caswell from off each side of the above-mentioned premises and invest the purchase money in such securities as are legal for trust funds and the said Samuel Engs, trustee as aforesaid, shall hold the funds, so created, as collateral security for the payment of the semi-annual sums this day agreed to be paid by me to the said Mary Beattie until her death. And after her decease then as such security for the payment of the several semi-annual sums this day agreed to be paid by me to my said children, David, Emily and Charles Beattie, until their arrival at the age of twenty-one years, or their marriage or death within that age, respectively, and after the payment of all such semi-annual sums has ceased to be obligatory upon me from any cause whatever to transfer such securities to me the said John Beattie, my heirs and assigns."

By another instrument in writing, under seal, bearing date April 19, 1877, the said John Beattie assigned, transferred and set over to said Samuel Engs as trustee a certain mortgage deed theretofore given to said John Beattie by one John Fadden, covering certain real estate in Middletown, in this State, as well as the note and claim thereby secured, "the said Samuel Engs to hold the same in trust as collateral security for the payment of the amounts agreed to be paid semi-annually by me to said Engs and his successors according to the provisions of the deed hereinbefore referred to."

By a fourth instrument in writing under seal, dated August 24, 1877, the trust deed secondly above mentioned was modified by a covenant with "said Samuel Engs, trustee as aforesaid, and his successor and successors in office that within three years from and after the date of the

said trust deed the said Samuel Engs, trustee as aforesaid, may sell and convey the said lots described as aforesaid in such way or manner as he may judge best without the interruption of the court of probate of said Newport notwithstanding anything to the contrary contained in the principal deed of date, April 19, 1977, referred to aforesaid. But after said three years, if said lots are unsold, the obligations and provisions of said deed relating to the above-described condition shall be and remain in full force and effect."

These four instruments are to be regarded as parts of one transaction. Three of them bear the same date, April 19; the other, August 24. The first, second and fourth were left for record at the same time in Newport, August 31, 1877, and the third on the following day in Middletown. The first three are said to have been "simultaneously delivered" in the deed of Engs to Stoddard *infra*. By deed, dated April 23, 1879, Samuel Engs, as trustee as aforesaid, in consideration of $700 conveyed to Isaiah Goodspeed "that parcel of land in said Newport bounded southerly on Walnut Street, fifty feet; westerly on land of Philip Caswell, one hundred feet; northerly on land late of John Caswell, deceased, fifty feet, and easterly on other land of this grantor, one hundred feet," the same being the lot to the west of the dwelling house on the land conveyed to Engs by Beattie as aforesaid.

The provision in said indenture for filling vacancies in the office of trustee is as follows: "And it is hereby provided that if the said trustee shall die or resign before the trusts aforesaid are fully executed, or shall neglect to execute or become incapable of executing said trusts, the court of probate for the Town of Newport aforesaid, shall have full power and authority to appoint some proper person to act as trustee in his place. And the said court shall have power and authority to appoint a trustee to execute the trusts whenever the said office of trustee shall from any cause whatever become vacant." There is no reference to filling

a vacancy as to any of the trusts arising under the deeds above referred to unless the foregoing extract from the indenture is to be construed as covering and including them. It is apparently assumed as correct, by all concerned, that by the words, "the court of probate for the Town of Newport," the court of probate of the City of Newport was intended.

October 3, 1881, Samuel Engs resigned as trustee and John C. Stoddard, of said Newport, was appointed trustee in his place by the court of probate of Newport. By deed dated October 10, 1881, Samuel Engs conveyed "unto said John C. Stoddard and his heirs, but in trust only for the trusts, uses and purposes created in and by the indenture and the deeds aforesaid and not otherwise" (this refers to the foregoing deeds) "a lot of land in said Newport with a dwelling house and other improvements thereon, about one hundred feet square, more or less, and bounded southerly on Walnut Street; westerly on land of Isaiah Goodspeed; northerly on land of the heirs of John Caswell, and easterly on the location of the Old Colony Railroad Co.," and also the mortgage with the note and deed thereby secured hereinbefore referred to and $668.75 in the Savings Bank of Newport as the proceeds of the sale of a lot of land to Isaiah Goodspeed.

By deed dated August 26, 1882, John Beattie, reciting that the equity of redemption of the property described in said mortgage deed from John Fadden had been conveyed to him, conveyed the land hitherto covered by said mortgage, situate on the Main road, in said Middletown and particularly described in the deed, to said John C. Stoddard in trust as collateral security for the payment of the moneys agreed by said John Beattie to be paid in and by the indenture first hereinbefore mentioned with authority to sell said real estate jointly with said Beattie and not otherwise, which said deed of August 26, contains the following provision: "Finally, upon the expiration of the liability of said John Beattie, his heirs, executors and administrators, to pay the moneys mentioned in said indenture, then all of said

real estate remaining unsold, and all proceeds of the sale thereof, with all accumulations, shall be paid, transferred and conveyed to said John Beattie, his heirs, executors, administrators and assigns."

After the death of John C. Stoddard, Alexander O'D. Taylor, of said Newport, was on August 17, 1896, appointed trustee in his place by the court of probate of Newport. Alexander O'D. Taylor died April 10, 1910, and the complainant was appointed trustee in his place, July 25, 1910, by said court of probate. No conveyance by deed of the real estate held in trust by the said John C. Stoddard, deceased, as aforesaid, was ever made to said Alexander O'D. Taylor, and no conveyance by deed of said real estate was ever made to the complainant. Said Mary Beattie died March 28, 1913, and the said David Beattie, Charles J. Beattie and Emily Beattie, now called Mary E. Sullivan, are now alive and are all over twenty-one years of age.

The complainant propounds ten questions, as follows:

"I   To whom shall the complainant pay over the money still remaining in his hands as trustee, as aforesaid?

"II   What right, title or interest has the complainant in and to the parcel of land in the Town of Middletown, described in the fifth paragraph hereof?

"III   What right, title or interest has the complainant in or to the parcel of real estate described in the twentieth paragraph hereof?

"IV   What right, title or interest has the complainant in or to the parcel of land described in the twenty-fourth paragraph hereof?

"V   What right, title or interest have the said Peter Beattie and John Beattie, Jr., as trustee under the last will and testament of John Beattie, deceased, in and to the real estate in the Town of Middletown described in the fifth paragraph hereof?

"VI   What right, title or interest have the said Peter Beattie, Charles J. Beattie and Mary E. Sullivan in or to the aforesaid real estate in said Town of Middletown?

"VII   What right, title or interest have the said Peter Beattie and John Beattie, Jr., in and to the parcel of real estate described in the twentieth paragraph hereof?

"VIII   What right, title or interest have the said David Beattie, Charles J. Beattie and Mary E. Sullivan in and to the said parcel of real estate described in the said twentieth paragraph hereof?

"IX   What right, title or interest have the said David Beattie, Charles J. Beattie and Mary E. Sullivan in and to the parcel of real estate described in the twenty-fourth paragraph hereof?

"X   What deeds of conveyance or other instruments shall this complainant be required to give in respect of the several parcels of real estate hereinbefore mentioned to such of the respondents as may be deemed by this Honorable Court to have any interest in any of the said real estate?"

The parties themselves, however, have so far come to an agreement respecting their controversies, as stated in their behalf when the case was heard, as to reduce the matters in dispute between them to one, that is to say:   the executors under the will of said John Beattie claim that they are entitled to receive from the complainant the money now in his hands as trustee, the same being what remains from the proceeds of the sale of the lot to Isaiah Goodspeed and the other respondents admit this claim to be correct; the trustees under said will claim that they are entitled to have said real estate in Middletown conveyed to them as part of said John Beattie's estate and the other respondents admit the correctness of this claim; the respondents, David Beattie, Charles J. Beattie and Mary E. Sullivan, claim that they are entitled to have conveyed to them in fee the lot fifty by one hundred feet on Walnut Street on which said dwelling house stands and the other respondents, said executors and trustees, admit that this claim is correct.   Accordingly the questions numbered I, V, VI and IX require no further consideration.

(1)

But the children of said Mary Beattie on the one hand, and the said trustees on the other, each claim the right to have conveyed to them in fee the lot fifty by one hundred feet on Walnut Street situate to the east of and next to the lot on which the dwelling house stands. The answers to questions VII and VIII are involved in this matter or point in controversy.

The determination of this question of the ownership of this vacant lot depends upon the construction given to the deed of April 19, 1877, conveying the Walnut Street estate to Samuel Engs as trustee.

The words "said premises" as they appear in the habendum of said deed, first in reference to the occupancy thereof by said Mary Beattie and secondly in reference to the conveyance thereof to her children, are naturally and plainly identical in meaning with the "parcel of land with a dwelling house thereon standing," measuring one hundred by one hundred and fifty feet thereinbefore described: "the above-mentioned premises" "from off each side" of which the trustee is to convey "lots fifty feet front," evidently refer to and mean the entire parcel aforesaid, as the two lots are to be sold "from off," that is off from it, as originally part of it. The provisions of the deed therefore as to these two lots are clearly repugnant. However it may have been

(2)

in former times the modern rules of construction applied in cases of repugnancy give effect to every part of a deed, if possible, consistent with the rules of law and the intention of the grantor; otherwise the part which is repugnant to the intention is rejected. *Waterman* v. *Andrews*, 14 R. I. 589, 594; see, also, *Almy* v. *Daniels*, 15 R. I. 312, 315; *Langley* v. *Honey*, 20 R. I. 699; *Fisk* v. *Brayman*, 21 R. I. 195, 198; *Shartenberg & Robinson* v. *Ellbey*, 27 R I. 414, 417. It is obvious that effect can not be given to both of these repugnant provisions. It becomes necessary therefore to ascertain the intention of the grantor as disclosed by the deed itself which is to be construed from the standpoint of the parties at the time of its execution, taking into consid-

eration also the other instruments simultaneously delivered as part of the general scheme of the grantor, 39 Cyc. pp. 194, 196. Undoubtedly the deed is carelessly drawn in some respects. That is apparent from these repugnant provisions.

It also appears in the instruction to the trustee to convey "two lots fifty feet front on Walnut Street" . . . "from off each side of the above-mentioned premises." To obey this literally is impossible as it requires the conveyance of four lots where only three exist. It obviously means that two lots in all, one from off each side of the middle lot, are to be conveyed. It is plain that the object of the indenture was to furnish a fixed income for the said Mary Beattie during her life and to provide for the maintenance of said children until they respectively arrived at the age of twenty-one years or married or died within that age. In addition to this income the deed now being considered clearly makes provision for a home for the use and occupancy of the said Mary during her life and for the conveyance at her death of said home to her children who should survive her and attain the age of twenty-one years. The propriety of giving some security for the payment of the sums convenanted to be paid by the indenture was recognized. Perhaps the fact of the non-residence of John Beattie was a factor in bringing this about. The assignment of the Fadden mortgage and afterwards the conveyance of the Middletown real estate was solely for the purpose of security. The provision in the clause following the habendum in the deed now considered makes the two lots and proceeds of the sale thereof in like manner collateral security for the payments aforesaid. The purpose of the grantor as to the establishing of a home for Mary Beattie and her children would seem to be effectually carried out if Mary Beattie had the use and occupancy of the dwelling house and the middle lot on which it stood. And such real estate as she had the use of for life was to go to her three children at her death. The very fact that by the clause of the deed following the habendum he directs the sale of the two vacant lots by the trustee seems to make

clear that he had in mind the middle lot with the house thereon as constituting the property to be used as a home. That such was his deliberate intention is conclusively shown by his deed dated August 24, 1877. The deed of the Walnut Street estate is dated April 19. It was not executed, however, till August 6. Before it was recorded John Beattie executed the deed of August 24, modifying the former deed. Afterwards, on August 31, 1877, at 12h. 21m. P. M., as shown by the endorsements thereon, said deeds were together left for record as parts of one transaction. When by said last mentioned deed he authorized Samuel Engs as trustee to convey said two lots "in such way and manner as he may judge best" he made clear beyond question his intention that these two lots were not to be held in trust for said Mary as appurtenant to the house and ultimately to be conveyed to her children, but on the contrary that they were to be sold and the proceeds held only as collateral security and that when the trusts were executed said proceeds were to be transferred to him or his representative. The parties themselves put that construction upon the deed. In 1879 Samuel Engs sold the west lot and part of the proceeds of such sale are held by the complainant as trustee, the rest of it apparently having been used in carrying out the trusts under the indenture. There is no suggestion of any protest against the sale of said lot by Mary Beattie. In this hearing her children, through their counsel, concede that the proceeds of said sale now in the complainant's hands should be paid to the executors of the will of John Beattie. But if that be the proper legal disposition of said proceeds it would seem to make an end of the claim of the children of Mary Beattie to the vacant lot, as undoubtedly the intention of John Beattie was the same as to both lots. Said children now urge that the continued use of said vacant lot by their mother with the "acquiescence of all parties is strong evidence it was to pass under the terms of the habendum." Whatever weight might be given to the continued use of said lot, if a fact, it cannot be considered in this case, which

is heard on the allegations of the bill as admitted by the answers of the respondents. There is no allegation of the continued use of said lot by Mary Beattie in the bill. And the mere fact that the vacant lot was not sold by the trustee cannot defeat the grantor's purpose relative to its ownership, as that fact is not conditioned on its sale. It is very apparent that the grantor in the deed in question intended to convert the two lots into personalty. He says that his trustee "shall" . . . "convey in fee simple to the highest bidder at public auction" . . . "and invest the purchase money in such securities as are legal for trust funds," and "transfer such securities to me the said John Beattie, my heirs and assigns." But "land directed or agreed to be sold, although yet unsold, is regarded and treated as money." Pom. Eq. Juris. Sec. 1164. See, also, *Jones v. Probate Court*, 25 R. I. 361; *Van Zandt v. Garretson*, 21 R. I. 352; *In re Adams*, 32 R. I. 41. Hence, the words "to transfer such securities" are in the circumstances apt and sufficient to require the conveyance of said lot to the proper representatives of John Beattie under his will, it not having been sold as directed.

Questions VII and VIII are therefore to be answered by saying that Peter Beattie and John Beattie, Jr., as trustees under the will of John Beattie, deceased, have the equitable estate in fee to the real estate described in the twentieth paragraph of the bill, namely, said vacant lot, and that said David Beattie, Charles J. Beattie and Mary E. Sullivan have no right, title or interest therein.

Those of the questions asking for instructions relative to the determination of the right, title and interest of the complainant in and to the real estate now remaining in trust are questions II, III and IV; and the last and tenth question relates to what conveyance of said real estate shall be made by him. No one of the respondents has seen fit to discuss or to refer to these four questions, in oral argument or by brief.

As already stated this real estate was vested by conveyance in John C. Stoddard at the time of his death. There was no conveyance of it to Alexander O'D. Taylor, or to the complainant. The conveyances by Samuel Engs and John Beattie were to "John C. Stoddard and his heirs in trust." The trusts and duties relative to the real estate are set out in the respective deeds of conveyances thereof, the final trust being "to transfer" or "to convey." In discussing the question of the necessity of conveyance upon the appointment of a new trustee, Perry in his work on Trusts, 6th ed. Sec. 284, says: "In trusts, that do not come within the words or spirit of the statute in relation to the vesting of trust estates in new appointees and in cases where the trust instrument is silent concerning the vesting of the estate in new trustees and there is no necessity for a departure from the ordinary rule of a conveyance, a conveyance must be made to the new trustee in order to vest the estate in him." See, also, 28 Am. & Eng. Encyc. L. 938, 959.

(3)    The General Laws of 1896, Chapter 208 and General Laws of 1909, Chapter 259, provide that when trustees are appointed to fill vacancies, the former by a judge of the Supreme Court, the latter by the Superior Court, the decree of appointment shall vest the legal title of the trust property in the trustee or trustees so appointed. While these statutes were in force, the one when Alexander O'D. Taylor was appointed, the latter when the complainant received his appointment, they do not apply in this case as the court of probate has no power or jurisdiction under the law to appoint trustees, but simply made the appointments referred to by virtue and an execution of the authority conferred upon it so to do by said indenture. It seems also that in strictness they were appointed only for the execution of the trusts created by said indenture, as there is no express provision in the indenture or said deeds to show that the court of probate was authorized to fill any vacancy in the office of trustee except as to the trusts under the indenture. Of course the creator of the trust could at his pleasure have

provided for the vesting of the real estate in the new trustee upon the resignation or death of a former trustee. *Ellis v. Boston, Hartford & Erie R. R. Co.*, 107 Mass. 1, 12; *National Webster Bank* v. *Eldridge*, 115 Mass. 424, 428. But there is no such provision as to vesting of title in any of the Beattie deeds. And there is no apparent necessity for a departure from the ordinary rule of conveyance. The conclusion therefore is that the legal title of the real estate never vested in said Taylor or the complainant, but has remained in the heirs of said John C. Stoddard. But inasmuch as the trusts have all now been fully executed, other than a conveyance thereof to the beneficiaries, the question is suggested as to whether the title to the real estate does not now pass to the beneficiaries under the statute of uses.

The courts differ on this point, some holding under similar conditions a conveyance necessary to pass the legal title, (4) others that the transfer is effected by the statute. 28 Am. & Eng. Ency. L. 932. This court has adopted the former view. In *Sprague* v. *Sprague*, 13 R. I. 701, 703, the court says: "The complainant contends that there is no legal title in the trust estate outstanding in the defendant, the trust having been executed by the statute of uses. We do not think this position, looking simply to the trust deed in its legal aspects, is tenable. The conveyance to the original trustee was a conveyance to him *in trust to convey*, after the death of Benoni Sprague, Senior, to his children or their descendants. It imposed an active duty on the trustee which he could not perform unless he retained the legal estate. And this court, as well as other courts, has held that when such a duty is imposed, though it be merely the formal or ministerial duty of conveying the estate, the trust is not executed until the duty either actually has been or may be presumed to have been performed." See, also *Read* v. *Power*, 12 R. I. 16.

To questions II, III and IV therefore answer is made that the complainant has no right, title or interest in the real estate referred to in said questions.

To question X answer is made that no deeds of conveyance from the complainant to the owners of the equitable estate in said real estate are necessary. It might, however, be useful to the respondents to have on the land records something, perhaps a release from the complainant with proper recitals, to show that the trusts under the various deeds of trust so far as they have devolved upon him have been performed.

A decree in accordance with this opinion may be presented in order that the same may be approved by this court and ordered to be entered in the Superior Court.

*Charles H. Koehne, Jr.,* for complainant.

*Sheffield & Harvey,* for John Beattie *et al.,* Exrs.

*Frank F. Nolan,* for Charles Beattie.

*Burdick & Macleod,* for David Beattie and Mary E. Sullivan.